IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**ISAAC LEGARETTA,**
**and JOHN or JANE DOES 1-20,**

    **Plaintiff,**

v.                                                 No. 2:21-cv-00179-MV-GBW

**FERNANDO MACIAS, Dona Ana County**
**Manager, DIRECTOR BRYAN BAKER, an**
**Official with the Dona Ana County Detention**
**Center, CAPTAIN BEN MENDOZA, an official**
**with the Dona Ana County Detention Center,**
**CAPTAIN JOSHUA FLEMING, an official with**
**the Dona Ana County Detention Center, and JOHN**
**or JANE DOES 1-20,**

    **Defendants.**

**RESPONSE TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION[1]**

    COME NOW Defendants Macias, Baker, Mendoza, and Fleming, by and through undersigned counsel, and hereby offer the following response to Plaintiff's "application for temporary restraining order and preliminary injunction[.]"

**INTRODUCTION**

    Plaintiff has requested this Court elevate his individual objection to receiving a COVID vaccine over the health and safety of his coworkers, the detention center detainees and inmates, and the public. In so requesting, his Complaint and Application ignore the current status of the pandemic and of the public health emergency in the world, the Unites States, New Mexico, and Dona Ana County. The following fact summary borrows heavily from Judge Browning's opinion

---

[1] By filing this Response, Defendants do not waive service of process in this case. Defendants are in the process of executing waivers of service pursuant to Rule 4. No Doe defendant has been identified or served nor are Doe defendants allowed under the federal rules of civil procedure.

in *ETP Rio Rancho Park, LLC v. Grisham*, CIV 21-0092 JB/KK, 2021 WL 431215, at *2 (D.N.M. Feb. 8, 2021). The coronavirus disease 2019 ("COVID-19") is a pandemic that has spread around the world, within the United States of America, and in New Mexico[2]. As of March 12, 2021, there have been 28,940.137 cases of COVID-19 in the United States, and 525,495 deaths[3]. As of March 12, 2021, New Mexico has had 187,720 cases and 3,845 deaths[4]. COVID-19 is a contagious disease that is spread through respiratory droplets that are released when infected individuals cough, sneeze, or talk. *See* Mayo Clinic. Risk factors for COVID-19 include close contact -- typically defined as within six feet -- with someone who has COVID-19, or when a person infected with COVID-19 coughs or sneezes around others[5]. Although COVID-19 may cause only mild symptoms for some people, for others, COVID-19 can cause severe complications, including pneumonia in both lungs, organ failure, and death[6]. COVID-19 symptoms can persist for months[7]. COVID-19 can damage the lungs, heart, and brain, which increases the risk of long-term health problems[8]. Signs and symptoms of COVID-19 typically appear two to fourteen days after exposure. *See* Mayo Clinic. The time after exposure and before the appearance of symptoms is

---

[2] *See* Coronavirus disease 2019 (COVID-19), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last visited March 12, 2021)("Mayo Clinic").
[3] *See* WHO Coronavirus Disease (COVID-19) Dashboard, World Health Organization, https://covid19.who.int/ (last visited March 12, 2021).
[4] *See* 2019 Novel Coronavirus Disease (COVID-19), New Mexico Department of Health (DOH), https://cv.nmhealth.org/ (last visited March 12, 2021).
[5] *See* Mayo Clinic; COVID-19 Basics: Symptoms, Spread and Other Essential Information About the New Coronavirus and COVID-19, Harvard Medical School (March 2020), https://www.health.harvard.edu/diseases-and-conditions/covid-19-basics (last visited March 15, 2021).
[6] *See* COVID-19 Basics: Symptoms, Spread and Other Essential Information About the New Coronavirus and COVID-19, Harvard Medical School (March 2020), https://www.health.harvard.edu/diseases-and-conditions/covid-19-basics.
[7] *See* COVID-19 (coronavirus): Long-term effects, the Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351#:~:text=COVID%%202D19%20symptoms%20can,within%20a%20few%20weeks (last visited March 15, 2021).
[8] *See* COVID-19 (Coronavirus): Long-Term Effects, the Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351#:~:text=COVID%%202D19%20symptoms%20can,within%20a%20few%20weeks (last visited March 15, 2021).

called the incubation period. *See* Mayo Clinic. Individuals who have been infected, therefore, usually do not know that they are infected for at least several days, and they may never know, if the infection remain asymptomatic. *See* Furukawa COVID-19 Transmission Paper. The risk of transmission is heightened in indoor environments, where infectious droplets may linger for longer periods of time[9]. COVID-19 is known to spread very fast in detention centers[10].

The Pfizer vaccine described in Plaintiff's Complaint is 95 percent effective at preventing laboratory confirmed COVID cases[11]. In response to the pandemic, Dona Ana County made the decision to protect the detainees, the public, and its employees by mandating the COVID-19 vaccine for detention center officers, and others. As such, the County Manager issued the directive attached to the Plaintiff's Complaint. As explained below, no preliminary relief should issue and this Court should deny Plaintiff's application for restraining order or injunction on the basis that Plaintiff has failed to illustrate irreparable harm, failed to illustrate a high likelihood of prevailing on the merits, and failed to explain why his objection should outweigh the safety of the employees and detainees who have to work or reside at the detention center.

## STANDARD OF REVIEW

Plaintiff has requested a temporary restraining order and a preliminary injunction. This Court has already denied Plaintiff's request for a temporary restraining order. *See* Doc. 7. To the extent the dual request remains pending, this Court has previously used the standard for

---

[9] *See* Nathan W. Furukawa et al., Evidence Supporting Transmission of Severe Acute Respiratory Syndrome Coronavirus 2 While Presymptomatic or Asymptomatic, Emerging Infections Diseases, Vol. 26, Num. 7 (July 2020), https://wwwnc.cdc.gov/eid/article/26/7/20-1595_article.
[10] *See* https://news.stanford.edu/2020/09/24/covid-19-spread-american-prisons/ (last accessed on March 12, 2021); *see also* https://news.harvard.edu/gazette/story/2020/08/harvard-study-links-jailing-practices-to-covid-19-spread/; https://www.cidrap.umn.edu/news-perspective/2020/08/studies-spotlight-high-covid-19-infection-rate-us-prisons.
[11] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html#:~:text=Information%20on%20how%20well%20the%20vaccine%20works (last accessed on March 12, 2021); *see also* https://abcnews.go.com/Health/pfizer-vaccine-shows-94-effectiveness-asymptomatic-transmission-covid/story?id=76389615 (last accessed on March 12, 2021)

3

preliminary injunction to conduct the analysis rather than the standard for a temporary restraining order, as no *ex parte* request remains before the Court. *See Torres v. City of Albuquerque*, 1:17-CV-00754-MV-SCY, 2017 WL 4162260, fn2 (D.N.M. Sept. 18, 2017).

> A preliminary injunction "is an extraordinary remedy," and accordingly, "the right to relief must be clear and unequivocal." *Schrier, M.D. v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation omitted). To obtain a preliminary injunction, Rule 65 of the Federal Rules of Civil Procedure requires the moving party to establish that four equitable factors weigh in favor of the injunction: "(1) irreparable injury in the absence of the injunction, (2) the threatened injury to the moving party outweighs the harm to the opposing party resulting from the injunction, (3) the injunction is not adverse to the public interest, and (4) the moving party has a substantial likelihood of success on the merits."

*Torres* at *3. "The movant bears the burden of demonstrating all four prongs' satisfaction." *Logan v. Pub. Employees Ret. Assn.*, 163 F. Supp. 3d 1007, 1026 (D.N.M. 2016)(referring to *Automated Mktg. Sys., Inc. v. Martin*, 467 F.2d 1181, 1183 (10th Cir.1972)).

In addition to the ordinary requirements for an injunction, the Tenth Circuit has identified several types of injunctions as "disfavored." *Schrier v. U. of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). The Tenth Circuit explained that

> any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course. Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard.

*Schrier*, 427 F.3d at 1261 (emphasis removed).

Mandatory injunctions are one category of injunction the Tenth Circuit has held to be disfavored. *Id.* The Tenth Circuit explained that a mandatory injunction is one which "affirmatively requires the nonmovant to act in a particular way, and as a result ... places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Schrier*, 427 F.3d at 1261 (citation and brackets removed). *See also ETP Rio Rancho Park, LLC v. Grisham*, CIV 21-0092 JB/KK, 2021 WL 431215, at *27 (D.N.M. Feb. 8, 2021) and *Salazar v. San Juan Cty. Det. Ctr.*, 2016 WL 335447, at *40). In *Schrier*, the Tenth Circuit concluded that the request to reinstate a terminated employee was a request for a mandatory injunction because it would require the court to engage in supervision. The Tenth Circuit explained that

> [t]here is no doubt that determining whether an injunction is mandatory as opposed to prohibitory can be vexing. Indeed, the distinction between mandatory and prohibitory injunctions cannot be drawn simply by reference to whether or not the status quo is to be maintained or upset. As suggested by the terminology used to describe them, these equitable cousins have been differentiated by examining whether the non-moving party is being ordered to perform an act, or refrain from performing. In many instances, this distinction is more semantical than substantive. For to order a party to refrain from performing a given act is to limit his ability to perform any alternative act; similarly, an order to perform in a particular manner may be tantamount to a proscription against performing in any other.

*Schrier*, 427 F.3d at 1260.

Here, as in *Schrier*, the requested injunction would require this Court to supervise Mr. Legaretta's employment, including when and where he might be allowed to work while refusing to comply with the County's COVID vaccination requirement for officers at the county detention center, and whether Defendants could be considered to have "taken any negative action" against Plaintiff as a result of his refusal, Complaint at 9. Thus, as the requested injunction would require

5

the Court's supervision, for a potentially long period of time, while the Court decides the underlying 14th Amendment issues, the injunction is mandatory in nature.  The injunction would also require affirmative acts by the defendants. Specifically, the injunction would require the defendants to endanger the current and future detainees by exposing them to Mr. Legaretta in his unvaccinated state or require the affirmative act of transferring him away from the detainees. Any issues arising from his employment (e.g. supervision, assignments, scheduling, work location or discipline), could require the Court's involvement and supervision. Thus, the Court should analyze the application as a request for a mandatory (disfavored) injunction. Regardless of which injunctive standard is applied, the Plaintiff cannot meet it.

I. **THE PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ILLUSTRATING THAT HE WILL SUFFER IRREPARABLE HARM.**

It is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Schrier*, 427 F.3d at 1267. The "irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages but speculative harm does not amount to irreparable injury[.]" *Id.* The rule that claims subject to remedy by monetary damages do not illustrate irreparable harm is not unique to the Tenth Circuit. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009); *John Doe Co. v. Consumer Fin. Protec. Bureau*, 849 F.3d 1129, 1134 (D.C. Cir. 2017).  In explaining "irreparable harm" The Tenth Circuit emphasized:

> To constitute irreparable harm, an injury must be certain, great, actual and not theoretical. Merely serious or substantial harm is not irreparable harm.  The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.

*Schrier* 427 F.3d at 1267(citation and brackets omitted).

Here, Plaintiff fails to demonstrate imminent irreparable harm. First, Plaintiff has failed to demonstrate an injury that could not be remedied by monetary damages. Under the worst case scenario, Plaintiff is terminated. If terminated, money damages are available at a later date should a jury find in his favor and those damages can fully compensate him for his injury. *See Sampson v. Murray,* 415 U.S. 61, 92 n.68 (1974) (absent a "genuinely extraordinary situation," financial distress or difficulty caused by termination of employment is not irreparable harm); *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 579, (6th Cir. 2002) (stating that the possibility of losing one's job while litigation is pending does not constitute irreparable harm because "income wrongly withheld may be recovered through monetary damages in the form of back pay"); *Cooper v. TWA Airlines*, LLC, 274 F. Supp. 2d 231, 239–41(E.D. N.Y. 2003) (denying application for preliminary injunction prohibiting airline from furloughing flight attendants because, except in extraordinary situations, loss of employment does not constitute irreparable injury; the hardships plaintiffs asserted would result from the furloughs—such as concerns about finding new employment, paying mortgages, and paying for health care—are common to most discharged employees, and hence did not present an "extraordinary" case); *English v. Trump*, 279 F. Supp. 3d 307, 322 (D.D.C. 2018), appeal dismissed, 2018 WL 3526296 (D.C. Cir. 2018) (denying preliminary injunction to government official because job loss rarely constitutes irreparable injury). *Conlay v. Baylor College of Medicine*, 2010 WL 774162, at 5-7 (S.D. Tex. Mar. 3, 2010) (no irreparable injury shown in employment case where money judgment would fully redress financial loss); *Coles v. Delaware River & Bay Auth.*, 2010 WL 335612, at *5-6 (D. Del. Jan. 29, 2010) (denying motion for injunctive relief arising out of the termination of plaintiffs' employment; loss of wages and "injury to reputation and other injuries that are extant with a

7

termination from employment ... do not establish the kind of injury necessary for the court to use its injunctive power.").

Plaintiff has not offered the Court any facts or arguments to support the conclusion that his claim is a "genuinely extraordinary situation" warranting an exception to the general rule. Instead, he baldly asserts that:

> Plaintiff could not sue for damages for the tort of retaliatory discharge because New Mexico's sovereign immunity would not allow it and such immunity for a retaliatory discharge has not been waived in the New Mexico Tort Claims Act. New Mexico's sovereign immunity protects Defendants from suits for monetary damages but not suits for injunctions. Lacking the ability to sue for damages for retaliatory discharge, Plaintiff will be irreparably harmed absent injunctive relief.

*See Complaint* at *6, ¶16. While no New Mexico Appellate Court has addressed this waiver issue, Plaintiff is correct that he cannot bring a claim for retaliatory discharge because he is not an at-will employee. *Silva v. Am. Fed'n of State, Cty. & Mun. Emps.*, 2001-NMSC-038, ¶ 1(retaliatory discharge is limited to at-will employees because it was created as an exception to the doctrine of at-will employment to prevent terminations in violation of clear public policy).  Nevertheless, Plaintiff's ignores various remedies outside the New Mexico Tort Claims Act to reach his empty assertion that he has no financial remedy and thus meets the imminent harm element. Similarly, the conclusory statement ignores that damages might be available if, as Plaintiff claims, his Fourteenth and Fourth Amendment rights were violated. *See Complaint* at *6-7, ¶17; *See also* Application at *2. Plaintiff's Application for Preliminary Injunction offers a single sentence supporting his conclusory statement of irreparable harm: "Plaintiff will suffer irreparable injury unless a TRO and preliminary injunction are granted; he can be harmed in either the potential physical harm from the unapproved experimental product itself; or harmed by the loss of his employment for not following an illegal directive." If, as Plaintiff claims, his constitutional rights

8

-

have been violated (or are being violated), Plaintiff would have a potential monetary remedy. *See* 42 U.S.C.A. § 1983; *see also* Plaintiff's Application alleging procedural and substantive due process violations. Plaintiff has left the Court without facts from which to find an irreparable injury and, therefore, has failed to meet his burden of demonstrating irreparable harm.

Besides failing to illustrate an irreparable injury, the Plaintiff has also failed to offer anything more than speculation that further disciplinary action is forthcoming or imminent. The Coaching/Counseling Acknowledgment attached to Plaintiff's Complaint does not mention or threaten termination. While the County may eventually impose further disciplinary action against Plaintiff should he continue to refuse the mandated vaccination, nothing at this point is imminent. Therefore, Plaintiff has not and cannot met his burden to illustrate an *imminent* irreparable injury.

In sum, Plaintiff has failed to meet his burden of establishing an irreparable harm because an adequate monetary remedy exists in the event he is terminated[12]. Also, at this point, Plaintiff's fears of termination are speculative, and any concerns over forced vaccination are wildly imaginative and absurd. Plaintiff has failed to demonstrate an irreparable injury and the Court may stop its analysis here and deny the request for preliminary injunction. *See Chavez v. Judd,* CV 18-00020 MV/JHR, 2018 WL 4684206, at *2 (D.N.M. Sept. 28, 2018)(denying a request under Rule 65 and declining to consider the remaining elements when plaintiff failed to make a threshold showing of "immediate and irreparable harm").

---

[12] This is not to say that there is a remedy or that plaintiff would be successful in such an endeavor; however, the Plaintiff has not met his burden of meeting the irreparable injury standard.

## II.   THE PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ILLUSTRATING A HIGH-LIKELIHOOD OF SUCCESS ON THE MERITS[13].

Not only has the Plaintiff not met his burden of establishing and immediate and irreparable harm, he also has failed to meet his burden of illustrating a high-likelihood of success on the merits. Plaintiff bases his claim on two loosely related theories. First, Plaintiff argues that the Supremacy Clause somehow prevents the County from requiring mandatory vaccination. *See* Complaint *4-5. Second, he argues that he has a 14th Amendment right to a zone of privacy and a right to bodily integrity prevents him from being subject to a mandatory vaccine. *See* Complaint at *6-7, ¶17. Both theories are likely to fail. While Plaintiff may lose his job for refusing the vaccination, he faces absolutely no threat of forcible vaccination.

First, regarding Plaintiff's argument or implication that the mandatory vaccine directive is precluded by Federal Preemption, the United States Centers for Disease Control and Prevention has explained: "The Food and Drug Administration (FDA) does not mandate vaccination. However, whether a state, local government, or employer, for example, may require or mandate COVID-19 vaccination is a matter of state or other applicable law."[14] Thus, Plaintiff's argument that the federal government has intended to occupy the field (Complaint ¶13) is contradicted by the guidance from the FDA and the CDC. No colorable argument exists that any federal regulation or regulatory authority occupies the field or prevents mandatory vaccine policies.

To the extent Plaintiff bases his preemption argument on 21 U.S.C.A. § 360bbb-3, nothing in that statute indicates any attempt to occupy the field or prevent localities from requiring the

---

[13] Additionally, the named defendants are not subject to suit under federal Rule 17 and NMSA § 4-46-1. *See generally Angel v Torrance County Sheriff, et al* (DNM 8/23/2005 Black); *Lamendola v. Taos County Sheriff's Office*, DNM CIV 18-163-KBM-SCY (September 09, 2018); *see also Mayer v. Bernalillo County et al*, CIV 18-666-JB-SCY; *Boland v. Sandoval County*, 2020 WL 1954014, at *2 (D.N.M. Apr. 23, 2020); and *Blake v. Lea County Corr. Facility*, 2020 WL 1676949, at *3 (D.N.M. Apr. 3, 2020).
[14] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/essentialworker/workplace-vaccination-program.html (accessed on March 12, 2021)

COVID vaccine in vulnerable detention center environments. At most, the statute requires potential vaccine recipients to be informed of the consequences of refusing the vaccine. *See* 21 U.S.C.A. § 360bbb-3(e)(1)(A)(ii)(III). Plaintiff offers nothing to support a preemption claim and, therefore, cannot meet his burden to illustrate a high-likelihood of success.

Similarly, Plaintiff's Fourteenth Amendment claim is unlikely to prevail. As the Third Circuit recently recognized, the argument that a mandatory vaccination program violates the Fourteenth Amendment was "foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905)." *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015). *Jacobson* "settled that it is within the police power of a state to provide for compulsory vaccination." *Zucht v. King*, 260 U.S. 174, 176 (1922). In *Jacobson*, "[t]he Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole." *Phillips* at 542. *See also Caviezel v. Great Neck Pub. Schools*, 500 Fed. Appx. 16, 18 (2d Cir. 2012)(unpublished). The Tenth Circuit has also mentioned *Jacobson* in a favorable light. *See Dunn v. White*, 880 F.2d 1188, 1195 (10th Cir. 1989)("compulsory vaccination is constitutional")(quote from parenthetical). *See also High Plains Harvest Church v. Polis*, 835 Fed. Appx. 372, 374 (10th Cir. 2020)(unpublished)("we are mindful that state officials may fight a global pandemic through emergency health orders.").

Because federal authorities have recognized that compulsory vaccination is a state law question and several courts, including the Tenth Circuit and the Supreme Court have held that a mandatory vaccination program is constitutional, little chance exists that the Plaintiff can succeed on his underlying claim. More importantly for purposes of the request for an injunction, Plaintiff

11

has not met his burden of demonstrating a high-likelihood of success on the merits. Accordingly, the Court may cease its analysis here and deny the request for preliminary injunction.

### III. THE THREATENED INJURY TO THE PLAINTIFF DOES NOT OUTWEIGH THE HARM TO THE DEFENDANTS AND THE INJUNCTION WOULD BE AGAINST THE PUBLIC INTEREST.

For his purported harm, Plaintiff claims (without fact support) that his termination is imminent and (without fact support) that he risks serious injury from accepting a COVID vaccine. The absence of evidence or facts supporting those claims should cause the Court pause. Further, Plaintiff has not mentioned the potential harm to the defendants if the mandatory vaccination campaign is halted at the detention center.

Numerous courts have explained that detention centers have a special relationship with their custodial detainees. *See ETP Rio Rancho Park, LLC v. Grisham*, CIV 21-0092 JB/KK, 2021 WL 431215, at *32 (D.N.M. Feb. 8, 2021)("A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient).") (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)). *See also JL v. New Mexico Dept. of Health*, 165 F. Supp. 3d 996, 1010 (D.N.M. 2015, Vazquez)("when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.") (Internal citation omitted). Similarly, the New Mexico Tort Claims Act waives immunity for claims based on the negligent operation of a public building. *See* NMSA § 41-4-6. This section has been interpreted to include claims where a facility is operated in a way that creates a danger to the class of users of the building. *See generally Garner v. Dept. of Corrections*, 903 P.2d 858 (N.M. App. 1995).

As the detention center likely has a duty to take action to protect the detainees who cannot avoid contact with detention officers, such as the plaintiff, the harm to the defendants (and the detainees in their facility) far outweighs the Plaintiff's empty claim that the vaccine may cause him harm. This is especially true in light of all the available evidence regarding the safety of the COVID vaccines[15].

Thus, if the Court enjoined the compulsory vaccine policy, the County could face state law premises liability claims or federal civil rights claims over failing to meet its constitutional obligations to protect detainees from known dangers. The potential harm to the county outweighs any potential harm to the Plaintiff, and the injunction would be against the public interest in exposing a vulnerable population to greater risk to placate the unfounded concern of one individual.

**IV.     THE COURT LACKS JURISDICTION TO ISSUE AN INJUNCTION.**

Finally, the "Norris–LaGuardia Act limits the jurisdiction of a district court to issue an injunction 'in a case involving or growing out of a labor dispute.' 29 U.S.C. § 101." *Brady v. Natl. Football League*, 640 F.3d 785, 789 (8th Cir. 2011). "No court of the United States shall have jurisdiction to issue any ... temporary or permanent injunction in any case involving or growing out of a labor dispute to prohibit any person or persons participating or interested in such dispute ... from doing, whether singly or in concert, any of several acts. 29 U.S.C. § 104. One of these acts is 'refusing ... to remain in any relation of employment.' 29 U.S.C. § 104(a)." *Id.* at 790.

"Congress's definition of a "labor dispute" is expansive: 'The term labor dispute includes any controversy concerning terms or conditions of employment…" *Id.* "Congress made the

---

[15] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html. (Accessed March 12, 2021); *see also* https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/is-the-covid19-vaccine-safe. (Accessed March 12, 2021)

definition broad because it wanted it to be broad." *Id.* "Congress described categories of such disputes in sweeping terms: Whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees..." *Id. See also Firebird Structures, LCC v. United Bhd. of Carpenters and Joiners of Am., Loc. Union No. 1505*, 252 F. Supp. 3d 1132, 1174 (D.N.M. 2017).

While the Tenth Circuit has not been called upon to apply the Norris–LaGuardia Act where the plaintiff seeks an injunction preventing an employer from taking an adverse employment action against an employee, the analysis in *Brady* applies equally here. As the Plaintiff's request is an injunction requiring his employer to maintain an employment relationship with him, the Court lacks jurisdiction to enter such an Order under the Act.

## CONCLUSION

Plaintiff has failed to meet his burden to establish the Rule 65 factors weight in his favor. He has failed to illustrate an immediate and irreparable harm; if the Plaintiff is terminated in violation of state or federal law, his claim would be one for monetary damages and he has not illustrated any special facts to deviate from the general rule that monetary damage claims do not qualify for injunctive relief. Similarly, Plaintiff has not illustrated a high likelihood of success on the merits. Numerous courts have rejected very similar arguments since 1905. Public policy is served by denying the injunctions so that the County may continue to take action to protect the detainees and its employees. Finally, the Court lacks jurisdiction to require the County to maintain an employment relationship with the Plaintiff.

As such, the Defendants request the Court deny the Plaintiff's Application for restraining order or injunctive relief.

Respectfully submitted:

NEW MEXICO ASSOCIATION OF COUNTIES

*/s/ Brandon Huss*
BRANDON HUSS
DAVID A. ROMAN
MARK DREBING
111 Lomas Blvd. Ste. 424
Albuquerque, New Mexico 87102
(505) 820-8116
bhuss@nmcounties.org
droman@nmcounties.org
mdrebing@nmcounties.org
*Attorneys for Defendants Macias, Baker, Mendoza, and Fleming*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2021, I filed the foregoing pleading electronically through the CM/ECF system, which caused all counsel of record to be served electronically, as more fully reflected on the Notice of Electronic Filing.

/s/ Brandon Huss
BRANDON HUSS