## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**ISAAC LEGARETTA, ANTHONY**
**ZOCCOLI and JOHN or JANE DOES 1-20,**

      **Plaintiffs,**

**v.**                                                              **No. 2:21-cv-00179-MV-GBW**

**FERNANDO MACIAS, Dona Ana County**
**Manager, DIRECTOR BRYAN BAKER, an**
**Official with the Dona Ana County Detention**
**Center, CAPTAIN BEN MENDOZA, an official**
**with the Dona Ana County Detention Center,**
**CAPTAIN JOSHUA FLEMING, an official with**
**the Dona Ana County Detention Center, COUNTY**
**OF DONA ANA and JOHN or JANE DOES 1-20,**

      **Defendants.**

## DEFENDANTS MACIAS, BAKER, MENDOZA, FLEMING AND
## COUNTY OF DONA ANA'S MOTION TO DISMISS IN LIEU OF AN ANSWER[1]

      COME NOW Defendants Macias, Baker, Mendoza, Fleming, and County of Dona Ana[2],

by and through undersigned counsel, and hereby move the Court for an order dismissing Plaintiff's

Complaint with prejudice.

---

[1] 1 By filing this motion in lieu of an answer, defendants do not intend to waive any affirmative defense and reserve the right to state additional affirmative defenses at a later date should the need arise. However, defendants without limitation state the following possible affirmative defenses: individual defendants may not be named in their official capacities in New Mexico; plaintiffs have failed to state a claim under which relief may be granted; plaintiffs' claims are barred by the failure to exhaust administrative remedies; plaintiffs have failed to mitigate their damages; any damage incurred by the plaintiff was caused by others for which defendants cannot be held liable; the actions of defendants do not rise to the level of any contractual, statutory, or constitutional violations or other deprivations or breach of plaintiffs' rights; plaintiffs received all process which was due; defendants did not engage in any action constituting deliberate indifference to plaintiffs' rights; defendants' actions do not shock the conscience of the Court; plaintiffs' claims are barred by the doctrine of extraordinary circumstances; plaintiffs' complaint is barred by the doctrines of absolute and/or qualified immunity; plaintiffs' claims are barred as a matter of law; plaintiffs' claims against any official capacity defendant are barred by plaintiffs' failure to demonstrate a pattern of alleged acts and/or plaintiffs' failure to demonstrate the defendants acted with deliberate indifference to plaintiffs' rights, and/or by plaintiffs' failure to demonstrate the defendants acted, authorized or approved alleged unconstitutional acts by the adoption and/or implementation of an official plan or policy; and plaintiffs' claims fail to illustrate a violation of clearly established law.

[2] Dona Ana County has never been served and it appears that no summons has been issued to the County.

## INTRODUCTION

In their complaint, plaintiffs have requested this Court elevate their individual objections to receiving a COVID vaccine over the health and safety of their coworkers, the detention center detainees and inmates, and the public. In so requesting, the First Amended Complaint (FAC) ignores the current status of the pandemic and of the public health emergency in the world, the Unites States, New Mexico, and Dona Ana County. The following fact summary borrows heavily from Judge Browning's opinion in *ETP Rio Rancho Park, LLC v. Grisham*, CIV 21-0092 JB/KK, 2021 WL 431215, at *2 (D.N.M. Feb. 8, 2021). The coronavirus disease 2019 ("COVID-19") is a pandemic that has spread around the world, within the United States of America, and in New Mexico[3]. As of May 31, 2021, there have been 33,079,543 cases of COVID-19 in the United States, and 591,265 deaths[4]. As of May 31, 2021, New Mexico has had 202,821 cases and 4,263 deaths[5]. COVID-19 is a contagious disease spread through respiratory droplets released when infected individuals cough, sneeze, or talk. *See* Mayo Clinic, fn 1. Risk factors for COVID-19 include close contact -- typically defined as within six feet -- with someone who has COVID-19, or when a person infected with COVID-19 coughs or sneezes around others[6]. Although COVID-19 may cause only mild symptoms for some people, for others, COVID-19 can cause severe complications, including pneumonia in both lungs, organ failure, and death[7]. COVID-19 symptoms can persist

---

[3]   *See* Coronavirus disease 2019 (COVID-19), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last visited June 3, 2021)("Mayo Clinic").

[4] *See* CDC Covid Data Tracker https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last visited May 31 2021).

[5]   *See* 2019 Novel Coronavirus Disease (COVID-19), New Mexico Department of Health (DOH), https://cv.nmhealth.org/ (last visited May 31, 2021).

[6]   *See* Mayo Clinic; COVID-19 Basics: Symptoms, Spread and Other Essential Information About the New Coronavirus and COVID-19, Harvard Medical School (March 2020), https://www.health.harvard.edu/diseases-and-conditions/covid-19-basics (last visited June 3, 2021).

[7]   *See* COVID-19 Basics: Symptoms, Spread and Other Essential Information About the New Coronavirus and COVID-19, Harvard Medical School (March 2020), https://www.health.harvard.edu/diseases-and-conditions/covid-19-basics.

for months[8]. COVID-19 can damage the lungs, heart, and brain, which increases the risk of long-term health problems[9]. Signs and symptoms of COVID-19 typically appear two to fourteen days after exposure. *See* Mayo Clinic. The time after exposure and before the appearance of symptoms is called the incubation period. *See* Mayo Clinic. Individuals who have been infected, therefore, usually do not know that they are infected for at least several days, and they may never know, if the infection remains asymptomatic. *See* Furukawa COVID-19 Transmission Paper. The risk of transmission is heightened in indoor environments, where infectious droplets may linger for longer periods of time[10]. COVID-19 is known to spread very fast in detention centers[11].

The Pfizer vaccine described in Plaintiff's Complaint is 95 percent effective at preventing laboratory confirmed COVID cases[12]. In response to the pandemic, Dona Ana County decided to protect the detainees, the public, and its employees by mandating the COVID-19 vaccine for detention center officers, and certain other County employees. As such, the County Manager issued the directive attached to the plaintiffs' Complaint.

Plaintiffs have asserted seven counts in their complaint. Counts I, III, IV, V, and VI all rely on plaintiffs' theory that a vaccine mandate for detention center employees is either

---

[8] *See* COVID-19 (coronavirus): Long-term effects, the Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351#:~:text=COVID%%202D19%20symptoms%20can,within%20a%20few%20weeks (last visited June 3, 2021).

[9] *See* COVID-19 (Coronavirus): Long-Term Effects, the Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351#:~:text=COVID%%202D19%20symptoms%20can,within%20a%20few%20weeks (last visited June 3, 2021).

[10] *See* Nathan W. Furukawa et al., Evidence Supporting Transmission of Severe Acute Respiratory Syndrome Coronavirus 2 While Presymptomatic or Asymptomatic, Emerging Infections Diseases, Vol. 26, Num. 7 (July 2020), https://wwwnc.cdc.gov/eid/article/26/7/20-1595_article.

[11] *See* https://news.stanford.edu/2020/09/24/covid-19-spread-american-prisons/ (last accessed on March 12, 2021); *see also* https://news.harvard.edu/gazette/story/2020/08/harvard-study-links-jailing-practices-to-covid-19-spread/; https://www.cidrap.umn.edu/news-perspective/2020/08/studies-spotlight-high-covid-19-infection-rate-us-prisons.

[12] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html#:~:text=Information%20on%20how%20well%20the%20vaccine%20works (last accessed on March 12, 2021); *see also* https://abcnews.go.com/Health/pfizer-vaccine-shows-94-effectiveness-asymptomatic-transmission-covid/story?id=76389615 (last accessed on March 12, 2021)

unconstitutional or preempted by federal law. Count VII is a claim asserting claims under international law, which fails to state any plausible claims against the defendants and fails to illustrate subject matter jurisdiction. Count II is a state law claim brought under the New Mexico Whistleblower Protection Act. That claim requires an underlying unlawful act by the government. Because the vaccine mandate is lawful, constitutional, and not preempted by federal law, all of plaintiffs' counts fail as a matter of law and the Court should enter an order dismissing the complaint with prejudice.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the Court reviews the allegations for plausibility; specifically, the Court queries whether enough facts have been pled to state a plausible claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The "plaintiff must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009).

> If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied this requirement. If it omits some necessary facts, however, it may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions. But if the complaint is sufficiently devoid of facts necessary to establish liability that it encompasses a wide swath of conduct, much of it innocent, a court must conclude that plaintiffs have not nudged their claims across the line from conceivable to plausible. Plaintiffs thus omit important factual material at their peril. While a complaint must be short and plain, it must also show not merely assert that relief is appropriate if it is true. Thus, despite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.

\*\*\*

> This pleading requirement serves two purposes. First, it ensures that defendants know the actual grounds of the claim against them, and can therefore prepare a defense.  Second, it avoids ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim. The latter concern is especially

> pertinent in [] immunity cases, where the very purpose of interlocutory appeal is to spare official defendants from the ordeal of discovery if the complaint fails to allege a constitutional violation…

*Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)(internal citation removed)(discussing qualified immunity).

In reviewing the plausibility of a complaint, the Court assumes the truth of all well-pleaded facts, and draws reasonable inferences therefrom in the light most favorable to the plaintiff. *See Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  This assumption, however, is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements. *See Iqbal*, 556 U.S. at 678.

In addition, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under Rule 8(a)(2). *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.2009)(quotation marks and citation omitted), cert. denied, 130 S.Ct. 1142, (2010). The Supreme Court has clarified the Rule 12 standard, stating that "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Id*. at 1247 (quoting *Twombly*, 550 U.S. at 570. Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Under this standard, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Smith*, 561 F.3d at 1098. Therefore, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting

*Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Vague and conclusory allegations will not sustain a claim under Rule 12 and *Iqbal*. *See Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has merely made an allegation, "but it has not shown that the pleader is entitled to relief." *Iqbal* at 1950 (emphasis added) (alteration, quotation marks, and citation omitted).

I.   **A MANDATORY VACCINATION POLICY FOR DETENTION OFFICERS DOES NOT VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS.**

   a.   **The Court should employ the shocks-the-conscience test under the substantive due process prong of the Fourteenth Amendment.**

Plaintiffs' FAC fails to explain which constitutional provision they believe the vaccination policy violates. The words "due process" and a reference to the 14th Amendment to the United States Constitution appear in paragraph 43 and the words "fundamental rights" appear in paragraph 46. Similarly, in paragraph 43, the FAC refers to

> an invasion of the zone of privacy and right to bodily integrity which have been held to emanate from various Bill of Rights amendments, including the first, fourth and fifth as well as the ninth amendment which speaks of essential but unenumerated rights.

Paragraph 58 asserts that "[i]t is a basic fundamental human right not to be subjected to non-consensual experimentation." The plaintiffs conclude paragraph 46 by asserting that requiring detention officers to have a COVID-19 vaccine as a condition of continued employment with the detention center "constitutes crimes against humanity."

The FAC does not explain any specific theory regarding a constitutional violation. However, the references to due process and the Fourteenth Amendment, combined with the fact that most (if not all) courts have evaluated attacks on mandatory vaccination policies under a variety of due process tests, lead the defendants to believe that the Court's analysis must begin and end with an analysis under the Fourteenth Amendment. Specifically, the Court should decide

whether there is "due process" protection for a detention officer who refuses to take a vaccine, which protects against a deadly communicable disease, to have access to unvaccinated detainees or prisoners. His request appears to be based on his belief that his choice somehow outweighs the County's obligations to take reasonable steps to ensure detainee safety.

Assuming that the FAC is attempting to state a Fourteenth Amendment claim, the Court still must determine which prong of the Fourteenth Amendment's due process protections are at issue: substantive due process or procedural due process. The FAC makes no reference to either. Thus, the parties and the Court are left to speculate about what particular theory the plaintiffs are attempting to advance. As plaintiffs have explained no procedural deprivation, and made references to fundamental rights, the defendants assume that plaintiffs have attempted to state a substantive due process claim. However, even that assumption does not yet end the inquiry into what test to apply. A review of cases regarding vaccine polices and COVID-19 public health orders indicates that the source of the policy at issue controls which substantive due process analysis applies.

> There are two types of substantive due process claims: (i) where the plaintiff alleges that the government has infringed upon a fundamental right, *see Washington v. Glucksberg*, 521 U.S. 702, 721-22, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)("*Glucksberg*"); and (ii) where the plaintiff alleges that a government action has deprived arbitrarily the plaintiff of life, liberty, or property, in a manner that shocks the judicial conscience, *see Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)(concluding that a sheriff's application of stomach pumping to force an arrestee to vomit shocked the conscience). The Tenth Circuit "appl[ies] the fundamental rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*." *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018)(emphasis in original), cert. denied, ___ U.S. ___, 139 S. Ct. 1347, 203 L.Ed.2d 570 (2019). *But see Seegmiller v. LaVerkin City*, 528 F.3d 762, 768 (10th Cir. 2008)(Tymkovich, C.J.)(explaining that "there is no hard-and-fast rule requiring lower courts to analyze substantive due

> process cases under only the fundamental rights or shocks the
> conscience standards"). *But see also Dawson v. Bd. of Cty.
> Comm'rs*, 732 F. App'x 624, 636 (10th Cir. 2018)(Tymkovich, C.J.,
> concurring)(noting that "though our circuit has sometimes repeated
> *Seegmiller's* 'both tests work' dicta, we do not follow it. Instead, we
> follow a simple binary approach" which applies the fundamental
> rights test to legislative actions and the shocks the conscience test to
> executive actions).

*ETP Rio Rancho Park, LLC v. Grisham*, 2021 WL 431215, at *37 (D.N.M. Feb. 8, 2021)[13]. Thus, under the *Dawson* analysis, whether the Court should employ a shocks-the-conscience test or a fundamental rights approach turns on whether the policy at issue was legislative or executive.

According to the FAC, "On or about February 1, 2021, County Manager Fernando Macias issued a 'Mandatory COVID-19 Vaccination Directive,' requiring first-responders in Dona Ana County to receive the COVID-19 vaccination as a condition of ongoing employment." FAC ¶4; *see also* ¶¶9 and 33 (referring to the directive issued by Defendant Macias). Based on those allegations of executive action by Defendant Macias, the directive is executive action that should be analyzed under the shocks-the-conscience test of the substantive due process prong of the Fourteenth Amendment.

### b.  The directive should not shock-the-conscience of the Court.

"[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)(internal citation removed). In order to state a plausible substantive due process claim, "[a] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th

---

[13] Judge Browning seems to have left open the possibility that a complaint alleging deprivations of fundamental rights specifically might be analyzed under the fundamental rights test. *See* citation to *Abdi v. Wray*, 942 F.3d 1019, 1028 n.1 (10th Cir. 2019). However, the directive at issue is alleged to have been the executive act of Defendant Macias.

Cir. 2006) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)(internal quotation marks omitted)). "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Camuglia v. City of Albuquerque*, 448 F.3d at 1222-23 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995))(internal quotation marks omitted).

> Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) *the need for deference to local policymaking bodies in making decisions impacting upon public safety*."

*Camuglia v. City of Albuquerque*, 448 F.3d at 1223 (emphasis added) (quoting *Uhlrig v. Harder*, 64 F.3d at 574). "[T]he Supreme Court has emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)(internal citation removed).

According to the Tenth Circuit, the plaintiffs must show a "level of executive abuse of power that shocks the conscience. In other words, the executive abuse represents arbitrary action of government and requires a showing of government officials abusing their power, or employing it as an instrument of oppression." (internal citation removed) *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). "What shocks the conscience in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstance before any abuse of power is condemned as conscience shocking."

Thus, the operative question is whether a mandatory COVID-19 vaccine directive for detention officers shocks the Court's conscience. It should not. Numerous courts have explained that detention centers have a special relationship with their custodial detainees. *See ETP Rio*

*Rancho Park, LLC v. Grisham*, CIV 21-0092 JB/KK, 2021 WL 431215, at \*32 (D.N.M. Feb. 8, 2021)("A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient).") (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)). *See also* *JL v. New Mexico Dept. of Health*, 165 F. Supp. 3d 996, 1010 (D.N.M. 2015, Vazquez, J.)("when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.") (Internal citation omitted). Similarly, the New Mexico Tort Claims Act waives sovereign immunity for claims based on the negligent operation of a public building. *See* NMSA § 41-4-6. This section has been interpreted to include claims where a facility is operated in a way that creates a danger to the class of users of the building, including in the context of a detention center. *See generally* *Garner v. Dept. of Corrections*, 903 P.2d 858 (N.M. App. 1995).

Given the federal and state obligations to take reasonable actions to protect detainees from known risks and the risks to vulnerable populations (such as detainees) posed by COVID-19, the mandatory vaccine directive could hardly be conscience shocking. Instead, as Judge Browning recently noted in denying an injunction against the New Mexico state public health orders, "the notion that restrictions designed to save human lives are 'conscience shocking' [is] absurd and not worthy of serious discussion." *ETP Rio Rancho Park, LLC v. Grisham*, 2021 WL 431215, at \*39 (D.N.M. Feb. 8, 2021) (quoted from *Herrin v. Reeves*, No. CIV 20-263 MPM\RP, 2020 WL 5748090, at \*9 (N.D. Miss. Sept. 25, 2020)). This is especially true in the context of all the

available evidence regarding the safety of the COVID vaccines.[14] As such, the Court should find that the mandatory vaccine directive does not shock the Court's conscience and that the directive is unlawful.

As every claim in the Complaint derives from plaintiffs' argument that the directive is unlawful, the finding that the directive does not violate the Constitution, is lawful, and does not shock this Court's conscience should resolve every claim. Thus, upon such a finding that the directive was constitutional and lawful, the Court should dismiss the entire complaint with prejudice.

### c. THE DIRECTIVE DOES NOT VIOLATE THE FOURTEENTH AMENDMENT.

Even if the Court goes farther in its analysis than the shocks-the-conscience test and applies a fundamental rights test[15], the argument that a mandatory vaccination program violates the Fourteenth Amendment is "foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts,*[16] 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905)." *Phillips v. City of New York,* 775 F.3d 538, 542 (2d Cir. 2015). *Jacobson* "settled that it is within the police power of a state to provide for compulsory vaccination." *Zucht v. King,* 260 U.S. 174, 176 (1922). In *Jacobson,* "[t]he Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole." *Phillips* at 542. *See also Caviezel v. Great Neck Pub. Schools,* 500 Fed. Appx. 16, 18 (2d Cir. 2012)(unpublished). The Tenth Circuit has also mentioned *Jacobson* in a

---

[14] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html. (Accessed March 12, 2021); *see also* https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/is-the-covid19-vaccine-safe. (Accessed March 12, 2021)

[15] *See ETP Rio Rancho Park, LLC v. Grisham,* 2021 WL 431215, at *37 (D.N.M. Feb. 8, 2021) (discussing *Abdi, supra*).

[16] For interesting background on *Jacobson* see https://www.washingtonpost.com/history/2021/04/01/vaccine-supreme-court-smallpox-covid/

favorable light. *See Dunn v. White*, 880 F.2d 1188, 1195 (10th Cir. 1989) ("compulsory vaccination is constitutional")(quote from parenthetical). *See also High Plains Harvest Church v. Polis*, 835 Fed. Appx. 372, 374 (10th Cir. 2020)(unpublished) ("we are mindful that state officials may fight a global pandemic through emergency health orders.").

Plaintiffs' FAC urges the Court to ignore or limit *Jacobson* by noting that the opinion is 116 years old and claiming that somehow reproductive health cases limit *Jacobson* or create new rights. Not only has *Jacobson* never been limited or overruled by the United States Supreme Court, but *Jacobson* is routinely cited in cases validating mandatory vaccination policies. For example, in *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) the Second Circuit relied extensively on *Jacobson* to find that a mandatory school vaccination policy did not violate the plaintiffs' substantive due process rights. Specifically, the Court noted,

> Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* made clear, that is a determination for the legislature, not the individual objectors. Plaintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than Jacobson's was more than a century ago.

*See also Caviezel v. Great Neck Pub. Sch.*, 500 Fed. Appx. 16, 19 (2d Cir. 2012) (holding that *Jacobson* is still binding law and that police powers reserved to the state allow for mandatory vaccination policies); *Big Tyme Investments, L.L.C. v. Edwards*, 2021 WL 118628 (5th Cir. Jan. 13, 2021) (relying extensively on *Jacobson* to reject a challenge to a Louisiana public health order). As recently as November 2020, the Supreme Court has continued to cite *Jacobson* as good authority. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 71, 208 L. Ed. 2d 206 (2020) (Justice Gorsuch, concurring "[The vaccine requirement in *Jacobson*] easily survived rational basis review, and might even have survived strict scrutiny, given the opt-outs available to

certain objectors.") *See also Food & Drug Admin. v. Am. Coll. of Obstetricians & Gynecologists, 141 S. Ct. 10, 12, 208 L. Ed. 2d 155 (2020)*:

> "Our Constitution principally entrusts 'the safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.' *Jacobson v. Massachusetts*, 197 U.S. 11, 38 [25 S.Ct. 358, 49 L.Ed. 643] (1905). When those officials 'undertake to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.' *Marshall v. United States*, 414 U.S. 417, 427 [94 S.Ct. 700, 38 L.Ed.2d 618] (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 [105 S.Ct. 1005, 83 L.Ed.2d 1016] (1985)." *Id.*, at ——, 140 S.Ct., at 1613-1614 (ROBERTS, C. J., concurring in denial of application for injunctive relief) (alterations omitted).

The Supreme Court has neither impaired nor overruled *Jacobson*, nor is *Jacobson* somehow inapplicable to vaccines approved under Emergency Use Authorization. Indeed, at the time *Jacobson* was decided, neither the Food and Drug Administration nor any other regulatory agency of its type existed, so the principles of *Jacobson* could not be dependent on full regulatory approval of a vaccine. Further, as discussed below, the current regulatory authorities make clear that the legality of vaccine mandates is not affected by the fact that the vaccine is approved under an Emergency Use Authorization. Thus, there can be little doubt that policies designed to protect vulnerable populations from the COVID-19 virus and prevent the virus' spread are constitutional under any framework. Stated more specifically, "[e]ven an outright compulsory vaccination statute, subjecting a person to fine or imprisonment for neglecting or refusing to submit to vaccination, does not violate the constitutional guaranty." 16D C.J.S. Constitutional Law § 2074. Given that, there is little doubt that the directive at issue passes constitutional scrutiny. Thus, even

if the Court applies a fundamental rights test, the directive should be deemed lawful and constitutional and plaintiffs' FAC should be dismissed with prejudice.

## II.   NO FEDERAL AUTHORITY INDICATES ANY INTENT TO OCCUPY THE FIELD.

Regarding Plaintiff's argument or implication that the mandatory vaccine directive is precluded by Federal Preemption, the United States Centers for Disease Control and Prevention has explained: "The Food and Drug Administration (FDA) does not mandate vaccination. However, whether a state, local government, or employer, for example, may require or mandate COVID-19 vaccination *is a matter of state or other applicable law*."[17] (emphasis added). Thus, Plaintiff's argument that the federal government has intended to occupy the field (Complaint ¶29) is contradicted by the guidance from the FDA and the CDC. Further on May 28, 2021, the federal Equal Employment Opportunity Commission (EEOC) produced new guidance to employers which, in the question and answer section on vaccines, states:

> K.1.   Under the ADA, Title VII, and other federal employment nondiscrimination laws, may an employer require all employees physically entering the workplace to be vaccinated for COVID-19? (5/28/21)
> **The federal EEO laws do not prevent an employer from requiring all employees physically entering the workplace to be vaccinated for COVID-19**, subject to the reasonable accommodation provisions of Title VII and the ADA and other EEO considerations discussed below.

*See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (emphasis added) (last accessed on May 31, 2021).

---

[17]*See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/essentialworker/workplace-vaccination-program.html (accessed on March 12, 2021)

No colorable argument exists that any federal regulation or regulatory authority occupies the field or prevents mandatory vaccine policies. The CDC, FDA, and EEOC have all recognized that mandatory vaccination policies are not precluded by any federal authority; there is simply no basis to assert otherwise.

Finally, to the extent plaintiffs base their preemption argument on 21 U.S.C.A. § 360bbb-3, nothing in that statute indicates any attempt to occupy the field or prevent localities from requiring the COVID vaccine in vulnerable detention center environments. At most, the statute requires potential vaccine recipients to be informed of the consequences of refusing the vaccine. *See* 21 U.S.C.A. § 360bbb-3(e)(1)(A)(ii)(III). Plaintiffs' FAC illustrates that plaintiffs knew the consequences of refusing the vaccine, without a request for one of the accommodations allowed in the directive,: termination of the employment relationship. Thus, any requirement from the statute was satisfied and the statute does not aid a preemption or supremacy argument.

### III. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

#### a. QUALIFIED IMMUNITY STANDARD OF REVIEW

The doctrine of qualified immunity protects officials from civil liability as long as they do not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). To defeat this immunity, we require the plaintiff to show that

• the defendant violated a constitutional or statutory right and

• the violated right was "'clearly established at the time of the alleged unlawful activity.'"

*Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018)(bullet points in original). Those two elements are commonly referred to as the two prongs of the qualified immunity test.

Once "a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005); *see also Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018)(noting that district court decisions which place the burden on the defendant-movant of establishing qualified immunity constitute error). *Matthews* explains that, under the qualified immunity analysis, the conduct of each individual capacity defendant must be isolated and analyzed, as opposed to an analysis of the defendants' conduct cumulatively. *Id*. at 1145.

Regarding the clearly established law prong of a qualified immunity test, courts must not define the relevant constitutional right "at a high level of generality." *White v. Pauly*,137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). Instead, as the Supreme Court "explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id*. (quoting *Creighton*, 483 U.S. at 640, 107 S.Ct. 3034); *see also id*. (holding that lower court "misunderstood the 'clearly established' analysis" when it determined the law was clearly established without first "identify[ing] a case where an officer acting under similar circumstances as [defendant] was held to have violated" relevant constitutional right). *Perry v. Durborow*, 892 F.3d 1116, 1123 (2018).

The Supreme Court has explained that, to meet their burden, plaintiffs must illustrate that, "existing precedent must have placed the statutory or constitutional question beyond debate." *Pauly*, 137 S. Ct. at 551. The Tenth Circuit, in *Perry*, reversed the district court's denial of qualified immunity because "the district court erred in concluding that the law was clearly established without first identifying in its order a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Eighth or Fourteenth Amendments." *Perry*, 892 F.3d at 1127 (citation removed).

Only a month before the Tenth Circuit published the *Perry* decision, it published *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) where it explained, that "[b]efore a court may undertake the proper [qualified immunity] analysis, the complaint must isolate the allegedly unconstitutional acts of each defendant; otherwise the complaint does not "provide adequate notice as to the nature of the claims against each" and fails for this reason. (citation removed). Therefore, the immunity question raised below must be analyzed solely on the allegations made against each individual capacity defendant, isolated from conduct asserted generally. *Matthews* went on to grant immunity even under extremely egregious allegations contained in that complaint. Specifically, the Court explained that "[t]o allow Plaintiff's complaint to proceed on claims that have no basis in constitutional jurisprudence would thwart the aims of qualified immunity and impose excessive discovery costs on Defendants absent legal justification." *Id.*

> **b. PLAINTIFFS' HAVE NOT PLED SUFFICIENT ACTION BY DEFENDANTS BAKER, MENDOZA, OR FLEMING TO ILLUSTRATE A PLAUSIBLE INDIVIDUAL CAPACITY CLAIM AGAINST THEM.**

Plaintiffs have mentioned Defendants Baker, Mendoza, and Fleming in the caption and in paragraph 1 of the Complaint. Baker is also referred to in Exhibit B to the FAC. There is no other mention of those defendants and no explanation as to how those defendants "through [their] own individual actions, ha[ve] violated the Constitution." *Iqbal* at 1948.

"It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant, acting under color of state law, 'personally participated in the alleged violation.'" *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir.2007) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir.1996)). "The plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation." *Jenkins*, 81 F.3d at 994; see also *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir.2010) ("To establish a violation of § 1983 ...

the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.")(further quotations omitted); *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir.2010). *See also Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013)("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.")(internal quotation marks and citation omitted).

The Tenth Circuit "explained that to state a viable § 1983 claim and overcome a qualified immunity defense, plaintiffs 'must establish that each defendant ... [violated] plaintiffs' clearly established constitutional rights.... *Plaintiffs must do more than show ... that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations.'" Id.* at 1145 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013), emphasis contained in *Matthews.*).

In *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011), the Court evaluated a claim where an inmate pled guilty to false imprisonment and served time in the correctional facility. When he was released, his probation officer directed him to register as a sex offender. The plaintiff sued to be removed from the sex offender registry and the sex offender section of the probation department; he prevailed. He then brought suit against the Secretary of Corrections and the probation officer in both their official capacities and their individual capacities. Among other rulings, the district court denied the Secretary's motion to dismiss. On appeal, the Tenth Circuit found that claims stated against groups of "defendants" did not establish individual capacity claims against the Secretary. The Court noted that the plaintiff needed to identify specific actions taken by particular defendants that could form the basis of a claim. In so holding, the Tenth Circuit relied on *Iqbal* for the proposition that "it is particularly important that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the

basis of the claims against him or her, as distinguished from collective allegations against the state." *Id*. at 1163 (quotation removed).

Here, mentioning Baker, Mendoza, and Fleming in the caption and in a single paragraph does not constitute sufficient allegations of personal participation in any claim; neither does a reference to one defendant contained in one exhibit. Thus, Baker, Mendoza, and Fleming should be dismissed under Prong I of the qualified immunity test: the failure to state a particularized claim of personal participation in a constitutional violation. Wherefore, Baker, Mendoza, and Fleming hereby request dismissal based on qualified immunity and the failure to state a plausible claim against them.

### c. ANY POTENTIAL CLAIM IS NOT A VIOLATION OF CLEARLY ESTABLISHED LAW.

Even if this Court somehow found that the vaccine directive was a viable claim against Defendant Macias, the claim would be novel and not clearly established. Undersigned counsel has been unable to locate any case where such a directive has been found unconstitutional. Perhaps more importantly, counsel is unable to locate any case where an individual capacity defendant has been found to have violated the constitution for acting to protect detainees in a detention center or any case where the enactment of a COVID-19 vaccine directive was found to be an unconstitutional act.

As no factually analogous case has been located, no individual capacity defendant could have been on notice that their conduct violated clearly established law. Thus, every individual capacity defendant is entitled to qualified immunity from plaintiffs' suit under prong II of the qualified immunity test.

IV.     **THE REMAINDER OF PLAINTIFFS' CLAIMS ARE NOT ACTIONABLE CLAIMS IN THIS COURT.**

In Count VII, plaintiffs claim a "violation of human rights, customary international law, federal common law and informed consent laws." Plaintiffs have attempted to bring a claim based on their assertion that they have somehow been subjected to "nonconsensual human experimentation." FAC ¶56. To the extent Count VII is based on some perceived source of federal law, plaintiffs have not directed the Court or the defendants to the source. As federal courts are courts of limited jurisdiction, they require a statutory source of jurisdiction for non-constitutional claims. *See generally White v. Paulsen*, 997 F. Supp. 1380 (E.D. Wash. 1998) (declining to hear claims alleging medical experimentation under international law). As such, the Court lacks subject matter jurisdiction for any implied federal claim as the plaintiffs have offered no source of authority from which jurisdiction could derive.

Similarly, the various restatements and the list of random documents contained in ¶¶56-58 illustrate no source of jurisdiction or any private right of action against the defendants. Thus, any potential claim alluded to in Count VII lacks a jurisdictional basis and is not a private right of action that may be asserted against the defendants. *See generally White v. Paulsen*, 997 F. Supp. 1380 (E.D. Wash. 1998). Accordingly, to the extent that Count VII asserts any claim, it must be dismissed with prejudice for failing to state a plausible claim and for the lack of subject matter jurisdiction over claims not deriving from a constitutional or statutory source.

V.      **ANY OFFICIAL CAPACITY CLAIM AGAINST AN INDIVIDUAL DEFENDANT IS REDUNDANT TO THE CLAIMS AGAINST THE COUNTY AND MUST BE DISMISSED.**

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir.1998). If a governmental entity is already a defendant in a lawsuit, then any official

capacity claims against its employees are redundant and may be dismissed. *Bennett v. Johnson, No. 09–CV–612–TCK–PJC, 2010 WL 2465499, at *5 (N.D.Okla. June 11, 2010)*; see also *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 771 n .7 (7th Cir.2006) (holding that a Title VII claim against a school district employee in his official capacity duplicated plaintiff's Title VII claim against the school district itself and that it was proper for the district court to dismiss it); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers ... in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Bills v. City of Okla. City*, No. CIV–09–00974–D, 2010 WL 3604437, at *2–3 (W.D.Okla. Sept.9, 2010) (dismissing official capacity claims against governmental employees that duplicated plaintiff's claims against the governmental entity); *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F.Supp.2d 1295, 1300 (D.Kan.2006) (dismissing duplicative official capacity claims).

In other words, "[o]fficial capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 and citing *Brandon v. Holt*, 469 U.S. 464, 469 U.S. at 471-72). Consequently, when local officials are sued in their official capacities, the lawsuit is treated as a suit against the local governmental entity which employs the local officials. *See Vialpando v. Ritter*, 52 F.3d 339 (10th Cir. 1995). "[A] §1983 action appropriately is pleaded against a [local governmental entity] either by naming the [entity] itself or by naming [the entity's official] in his or her official capacity. Naming either is sufficient. Naming both is redundant." *Stump v. Gates*, 777 F.Supp. 808, 816 n.3 (D. Colo. 1991), aff'd, 986 F.2d 1429 (10th Cir. 1993)(citations omitted). See also *Vondrak v. City of Las Cruces*, 2009 WL 1300945 (D.N.M. Mar. 30, 2009); *Germain v. City of Albuquerque*, 2013 WL 12329770, at *2 (D.N.M. Aug. 8, 2013).

Because redundant claims do not state a plausible basis for relief under *Iqbal* (*Tavasci v. Cambron*, 2017 WL 3173011, at *1 (D.N.M. May 31, 2017)), any official capacity claim against the individual defendants must be dismissed. Accordingly, defendants move the Court for an Order dismissing any official capacity claims with prejudice against all individually named defendants[18].

Further, plaintiffs' Corrected First Amended Complaint lacks any assertion of policy; therefore, any official capacity claim fails as a matter of law. *See* Kentucky, 473 U.S. at 166 ("[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law.") Nothing in the entire Complaint mentions policy or custom; instead, the Complaint alleges a single isolated incident of alleged inappropriate prosecution and enforcement of a lien.

In sum, under the law of this Circuit and this District, no official capacity claim can be maintained against the named individuals in this suit. Wherefore, the movants hereby pray for an Order dismissing all official capacity claims brought against any or all individually named defendants.

## VI.     COUNTY OF DONA ANA IS NOT A VIABLE DEFENDANT UNDER NMSA § 4-46-1 AND FEDERAL RULE 17

NMSA § 4-46-1 precludes claims against the "County of Dona Ana." In New Mexico, NMSA § 4-46-1 requires that suits brought against a county be brought against "the board of county commissioners of the county of .........." This statute has been routinely used to dismiss claims brought against improperly named defendants and county departments, including claims against the "county of _____". *See generally* Angel v Torrance County Sheriff, et al (DNM 8/23/2005 Black); Lamendola v. Taos County Sheriff's Office, DNM CIV 18-163-KBM-SCY (September 09, 2018); *see also* Mayer v. Bernalillo County et al, CIV 18-666-JB-SCY. This line of cases follows guidance from the Tenth Circuit and others. *See* Bristol v. Bd. of County Com'rs

---

[18] The FAC refers to the defendants as "official[s]" in the caption and discusses "official capacity" status in ¶39.

*of County of Clear Creek*, 312 F.3D 1213; *Lundquist v. Univ. of S. Dakota Sanford Sch. of Med.*, 705 F.3d 378, 380 (8th Cir. 2013); *United States v. City of New York*, 683 F. Supp. 2d 225; *United States v. City of New York*, 683 F. Supp. 2d 225, 243–44 (E.D.N.Y. 2010)(vacated on other grounds).

Here, the "County of Dona Ana" is not a viable defendant to a suit, state or federal. As such, all claims against the County must be dismissed under Federal Rule 17 and NMSA § 4-46-1. *See Torres v. Shea*, 2020 WL 1676920, at *4 (D.N.M. Apr. 6, 2020); *Lamendola v. Taos County Sheriff's Office*, 338 F. Supp. 3d 1244 (D.N.M. 2018); *Mayer v. Bernalillo County*, 2018 WL 6594231, at *1 (D.N.M. Dec. 13, 2018); *Boland v. Sandoval County*, 2020 WL 1954014, at *2 (D.N.M. Apr. 23, 2020); and *Blake v. Lea County Corr. Facility*, 2020 WL 1676949, at *3 (D.N.M. Apr. 3, 2020).

Because the "County of Dona Ana" may not be sued under 4-46-1 and Federal Rule 17, it should be dismissed from this suit with prejudice.

## CONCLUSION

The vaccine directive enacted in Dona Ana County, New Mexico is lawful and constitutional. It is a rational response to a public health emergency. Numerous courts have recognized that mandatory vaccine policies are lawful and enforceable, so long as they provide limited exemptions. This directive provided the required exemptions. Thus, the directive complied with existing case law.

No federal statute, regulation, or agency has signaled any intent to occupy the field with respect to vaccine policies. To the contrary, the federal agency authorities have signaled the intent to leave the matter to the state and local governments. Such a public health decision is in conformity with case law explaining that vaccine policy and public health policy is best left to

state and local officials who answer to the voters. The absence of any federal authority occupying the field explains why essentially every state has had its own method for distributing vaccines and why some states feel the need to prohibit mandatory vaccine polices[19]. In sum, there is no good faith basis for asserting that the federal government has occupied the field on vaccine policy.

Additionally, it is misguided and potentially offensive to liken a vaccine policy designed to protect vulnerable populations to human experimentation prohibited by international law and treaty. To the extent any request for preliminary or permanent injunction, restraining order, or declaratory relief remains before the Court, defendants hereby incorporate their brief in opposition to preliminary relief filed on March 15, 2021 [Doc. 9].

As the directive is lawful, constitutional, and not precluded by federal law, the Court should dismiss plaintiffs' entire Complaint with prejudice and award the defendants their attorneys' fees and costs for defending this matter.

<div style="margin-left: 40%;">

Respectfully submitted:
NEW MEXICO ASSOCIATION OF COUNTIES
*/s/ Brandon Huss*
BRANDON HUSS
DAVID A. ROMAN
111 Lomas Blvd. Ste. 424
Albuquerque, New Mexico 87102
(505) 820-8116
bhuss@nmcounties.org
droman@nmcounties.org
*Attorneys for Defendants Macias, Baker, Mendoza, Fleming, and Dona Ana County*

</div>

---

[19]      https://www.usnews.com/news/best-states/articles/2021-04-30/these-states-are-banning-covid-19-vaccine-requirements.

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2021, I filed the foregoing pleading electronically through the CM/ECF system, which caused all counsel of record to be served electronically, as more fully reflected on the Notice of Electronic Filing.

/s/ Brandon Huss
BRANDON HUSS