## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ISAAC LEGARETTA,
and JOHN or JANE DOES 1-20,

       Plaintiff,

                                    Case No. 21-cv-179 MV/GBW

    vs.

FERNANDO MACIAS, Dona Ana County
Manager, DIRECTOR BRYAN BAKER, an
Official with the Dona Ana County Detention
Center, CAPTAIN BEN MENDOZA, an official
with the Dona Ana County Detention Center,
CAPTAIN JOSHUA FLEMING, an official with
the Dona Ana County Detention Center, COUNTY
OF DONA ANA and JOHN or JANE DOES 1-20,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Macias, Baker, Mendoza,

Fleming and County of Dona Ana's Motion to Dismiss in Lieu of an Answer ("Motion to

Dismiss") [Doc. 20] and Plaintiffs' Motion to Strike [Doc. 26]. The Court, having considered

the motions and the relevant law, finds that Defendants' Motion to Dismiss is well-taken and will

be granted and Plaintiffs' Motion to Strike is not well-taken and will be denied.

## BACKGROUND

Since its emergence last year, the novel coronavirus 2019, or Sars-CoV-2, the virus that

causes COVID-19, has spread exponentially through the world, and New Mexico has been no

exception. Governor Michelle Lujan Grisham first declared the existence of a Public Health

Emergency in New Mexico in March 2020, when COVID-19 reached our State, and has since

1

renewed that declaration. *See Executive Order 2022-024* (Apr. 29, 2022),

https://cv.nmhealth.org/public-health-orders-and-executive-orders/ (hereinafter referred to as

"NM Health Website"). As of April 15, 2022, over 79 million people have been infected with

COVID-19 in the United States, with over 1,000,000 related deaths, and the New Mexico

Department of Health ("DOH") has reported over 519,000 positive COVID-19 cases and 7,400

related deaths in New Mexico. *See April 15, 2022 Public Health Order*, NM Health Website.

Efforts to develop and distribute a vaccine against COVID-19 were swift. In December

2020, the FDA granted emergency use authorizations ("EUA") for the Pfizer/BioNTech

("Pfizer") two-dose mRNA vaccine for individuals 16 and older and for the Moderna two-dose

mRNA vaccine for individuals 18 and older. *See FDA News Release* (Dec. 11, 2020),

https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-

covid-19-issuing-emergency-use-authorization-first-covid-19; *FDA News Release* (Dec. 18,

2020), https://www.fda.gov/news-events/press-announcements/fda-takes-additional-action-fight-

against-covid-19-issuing-emergency-use-authorization-second-covid. In February 2021, the

FDA granted EUA for the Johnson & Johnson vaccine for individuals 18 and older. *FDA News*

*Release* (Feb. 27, 2021), https://www.fda.gov/news-events/press-announcements/fda-issues-

emergency-use-authorization-third-covid-19-vaccine. In May 2021, Pfizer's vaccine received

EUA for individuals 12 and older, and then in August 2021, **full FDA approval** for individuals

16 and older. *See FDA News Release* (May 10, 2021), https://www.fda.gov/news-events/press-

announcements/coronavirus-covid-19-update-fda-authorizes-pfizer-biontech-covid-19-vaccine-

emergency-use; *FDA News Release* (August 23, 3021), https://www.fda.gov/news-events/press-

announcements/fda-approves-first-covid-19-vaccine. In October 2021, the FDA authorized the

emergency use of Pfizer's vaccine for children five through 11 years of age. *See FDA News*

*Release* (Oct. 29, 2021), https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age.  In November 2021, the FDA amended the EUA for both the Moderna and Pfizer vaccines, authorizing use of a single booster dose for all individuals 18 years of age and older after completion of primary vaccination with any FDA-authorized or approved COVID-19 vaccine. *See FDA News Release* (Nov. 19, 2021), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-expands-eligibility-covid-19-vaccine-boosters. In December 2021 and January 2022, the FDA again amended the EUA for the Pfizer vaccine, expanding authorization of booster doses to individuals 12 to 17 years of age, at least five months after completion of primary vaccination with the Pfizer vaccine.  *See FDA News Release* (Dec. 9, 2021), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-expands-eligibility-pfizer-biontech-covid-19-booster-dose-16-and-17; *FDA News Release* (Jan. 3, 2022), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-takes-multiple-actions-expand-use-pfizer-biontech-covid-19-vaccine.  And on March 29, 2022, the FDA authorized a second booster dose of either the Pfizer-BioNTech or the Moderna COVID-19 vaccines for older people and certain immunocompromised individuals. *FDA News Release* (Mar. 29, 2022), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-second-booster-dose-two-covid-19-vaccines-older-and.  The DOH has advised that:  "the currently available COVID-19 vaccines are safe and the most effective way of preventing infection, serious illness, and death"; "widespread vaccination protects New Mexico's health care system as vaccines decrease the need for emergency services and hospitalization"; and "the refusal to receive the COVID-19 vaccine not only endangers the individual but the entire community, and further jeopardizes the

progress the State has made against the pandemic by allowing the virus to transmit more freely

and mutate into more transmissible or deadly variants." *August 17, 2021 Public Health Order*

(*"August 17, 2021 PHO"*), NM Health Website.

Against this backdrop, on January 29, 2021, Dona Ana County Manager Fernando

Macias issued a memorandum to "All Dona County First Responders," regarding "Mandatory

Covid-19 Vaccine Directive" ("Vaccine Directive").  Doc. 17 at 25.  Macias's memo explained:

"in accordance with the County's duty to provide and maintain a workplace that is free of known

hazards, we are adopting a mandatory COVID-19 vaccination directive to safeguard the health of

our employees, their families, the customers we serve, and the community at large from this

highly contagious, infectious disease." *Id.*  The memo further indicated that the Vaccine

Directive "takes into account all applicable laws and guidance from local health authorities." *Id.*

Under the Vaccine Directive, "all first responders," including "detention officers and other staff

who have face-to-face contact with inmates," are "required to receive the COVID-19 vaccination

unless a reasonable accommodation is approved." *Id.*  The memo required that first responders

receive the first dose of the vaccine by February 5, 2021, and made clear that "[b]eing vaccinated

[was] a requirement and a condition of on-going employment with the County due to the

significant health and safety risks posed by contracting or spreading COVID-19." *Id.* at 26.

At the time that Macias issued the Vaccine Directive, Plaintiffs Isaac Legaretta and

Anthony Zoccoli were employed at the Dona Ana County Detention Center (the "Detention

Center").  Doc. 17 ¶ 4.  On February 17, 2021, Legaretta signed a "Coaching/Counseling

Acknowledgement" ("Acknowledgment"), which referenced the Vaccine Directive and noted

that the Director of the Detention Center, Bryan Baker, had sent a follow-up email to all

Detention Center staff "with a requirement that all individuals with access to the secure area of

the facility are mandated to have received their first dose of their vaccination by February 5,

2021, unless there is a documented ADA or EEO exception granted by Human Resources."  Doc.

17 at 27.  The Acknowledgement states that, as of February 17, 2021, Legaretta had "not

provided proof of receiving the COVID-19 vaccination or having registered for the vaccination."

*Id.*  The Acknowledgement gave Legaretta five business days to either "comply with the

directives" or "request a reasonable accommodation by Human Resources."  *Id.*

Legaretta refused to receive the vaccine or request an accommodation.  Doc. 17 ¶ 5.  As a

result, he was "reassigned to the juvenile section of the Detention Center" and "dismissed from a

position he had on the Detention Center's emergency response team."  *Id.* ¶¶5-6.  Ultimately, he

"quit his employment with [Dona Ana] County."  *Id.* ¶ 7.  Zoccoli similarly refused to receive

the vaccine or request an accommodation and, as a result, was terminated from his employment

at the Detention Center.  *Id.* ¶ 8.

Based on the negative employment consequences of his refusal to receive the vaccine,

Legaretta commenced the instant action by filing his Complaint for Injunctive and Declaratory

Relief against Macias, Baker, Captain Ben Mendoza, and Captain Joshua Fleming (collectively,

the "Individual Defendants").[1]  Doc. 1.  Although Legaretta did not file a separate motion

requesting emergency relief, the Complaint requested, *inter alia*, that the Court "[e]nter an

immediate TRO and a preliminary injunction enjoining the Defendants from terminating,

demoting, or taking any negative action against Plaintiff for refusing to take a non-mandatory

unapproved vaccine."  *Id.* at 9.  In an Order entered on March 4, 2021, the Court declined to

---

[1] Plaintiffs have clarified that they are suing the Individual Defendants in their individual
capacity only.  *See* Doc. 22 at 22.

issue an emergency order on an *ex parte* basis but set an expedited briefing schedule on

Legaretta's request for emergency relief. Doc. 7.

On March 19, 2021, Legaretta withdrew his motion for emergency relief. Doc. 14.

Thereafter, on April 30, 2021, Legaretta filed an unopposed motion to amend his Complaint,

Doc. 15, which the Court granted on May 5, 2021. Doc. 18. On May 4, 2021, Legaretta filed the

Amended Complaint for Injunctive and Declaratory Relief, adding Zoccoli as a Plaintiff and

Dona Ana County (the "County") as a Defendant.[2] Doc. 17.

In the Amended Complaint, Plaintiffs claim that the Vaccine Directive violates a

provision of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3,

entitled "Authorization for medical products for use in emergencies," and thus is preempted by

federal law (Count One), and that, in issuing the Vaccine Directive and taking negative

employment actions against Plaintiffs for failing to comply therewith, Defendants violated: (1)

Plaintiffs' substantive due process rights under the Fourteenth Amendment of the United States

Constitution (Counts Four and Five); (2) the "unconstitutional conditions" doctrine (Count Six);

(3) New Mexico law, namely, the New Mexico Whistleblowers Act (Count Two) and the

common law prohibiting retaliatory discharge (Count Three); and (4) international "human

rights" laws, including the Nuremberg Code (Count Seven). *Id.* at 11-23. As a result of these

alleged violations, Plaintiffs request: (1) a declaratory judgment that Section 360bbb-3 "does not

permit Defendants to coerce an employee to accept an unapproved vaccine on penalty of

---

[2] Defendants argue that the County is not a proper defendant, and that Plaintiffs should have named the Board of County Commissioners in connection with their municipal liability claims. Doc. 20 at 22-23. "Municipal entities," however, "are considered 'persons' subject to § 1983 liability." *Hunter v. Luna Cty. Det. Ctr.*, No. 11-cv-954, 2012 WL 13076240, at *2 (D.N.M. Sept. 6, 2012). "New Mexico law . . . identifies counties as bodies politic with the power to sue and be sued." *Id.* Accordingly, the County is a "proper defendant[]" here. *Id.*

termination or other sanctions," that "[t]he doctrine of federal preemption invalidates and voids" the Vaccine Directive, and that "coercion and/or mandating an experimental injection constitutes violation of customary international standards, federal common law, and are crimes against humanity"; (2) an injunction prohibiting Defendants "from mandating experimental vaccines" and requiring Defendants "to reinstate" Zoccoli; and (3) awarding damages for Defendants' violation of Plaintiffs' rights under the New Mexico Whistleblower's Act and the federal constitution.[3]

On June 3, 2021, the Individual Defendants and the County filed their Motion to Dismiss. Doc. 20. Plaintiffs filed a response in opposition on June 28, 2021, Doc. 22, and Defendants' reply followed on July 12, 2021. Doc. 23. In connection with their Motion to Dismiss, Defendants filed three Notices of Supplemental Authority. Docs. 21, 25, 27. Plaintiffs filed their Motion to Strike these Notices on August 4, 2021, Doc. 26, and Defendants filed a response in opposition on August 18, 2021. Doc. 28. Both the Motion to Dismiss and the Motion to Strike are now before the Court.

## DISCUSSION

*Defendants' Motion to Dismiss*

In their Motion to Dismiss, Defendants argue that the Amended Complaint should be dismissed in its entirety against all Defendants for failure to state a claim. Defendants additionally argue that, as to Plaintiffs' federal constitutional claims brought pursuant to § 1983, the Individual Defendants are entitled to dismissal based on qualified immunity. As set forth

---

[3] The Court notes that "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). Accordingly, Plaintiffs' request for damages is cognizable only against the Individual Defendants, while their request for declaratory and injunctive relief is cognizable only against the County.

herein, the Court finds that Plaintiffs have failed to state any federal constitutional or statutory claims and that, as a result, the counts of the Amended Complaint allegedly arising under federal law must be dismissed with prejudice as to all Defendants. The Court thus need not reach the issue of qualified immunity. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and, accordingly, those claims will be dismissed without prejudice.

I.     Standard

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

II.   <u>The Instant Case</u>

 A.   <u>The Vaccine Directive Neither Violates Nor is Preempted by the FDCA.</u>

According to Plaintiffs, by mandating that certain individuals be vaccinated against COVID-19, the Vaccine Directive violates the FDCA, because the provision of the FDCA relevant to medical products under an EUA "states that where a medical product is 'unapproved' then no one may be mandated to take it." Doc. 17 ¶ 9 (quoting 21 U.S.C. § 360bbb-3(e)). As an initial matter, the FDA has now given its *full approval* – not just emergency use authorization – to the Pfizer vaccine as administered to individuals 16 years of age and older. *See FDA News*

*Release* (Aug. 23, 2021)*,* https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/comirnaty-and-pfizer-biontech-covid-19-vaccine ("On August 23, 2021, the FDA approved the first COVID-19 vaccine. The vaccine has been known as the Pfizer-BioNTech COVID-19 Vaccine, and will now be marketed as Comirnaty, for the prevention of COVID-19 disease in individuals 16 years of age and older.").  Accordingly, the provision of the FDCA quoted by Plaintiffs, which is applicable only to medical products under an EUA, is not applicable to the administration of the Pfizer vaccine to Plaintiffs herein, who presumably are 16 years of age or older.

Further, while the statutory provisions quoted by Plaintiffs apply to the Moderna vaccine, the J&J vaccine, and the Pfizer vaccine as administered to individuals under the age of 16, those provisions nowhere prevent the County, or any other entity, from requiring certain individuals to be vaccinated against COVID-19.  Rather, in relevant part, the FDCA requires that, for medical products under an EUA, "HHS must establish conditions to facilitate informed consent." *Klaassen v. Trustees of Indiana Univ. ("Klaassen I")*, 549 F. Supp. 3d 836, 870 (N.D. Ind. July 18, 2021) (citing 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)).  Specifically, "HHS must ensure that individuals taking the vaccine are informed that the Secretary has authorized the emergency use of the product," "of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown," and "of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." *Klaassen I*, 549 F. Supp. 3d at 870 (quoting 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)).  This informed consent requirement "only applies to medical providers."  *Klaassen I*, 549 F. Supp. 3d at 870. Here, Defendants are not "directly administering the vaccine" to detention officers and other first

responders employed by the County; instead, they are requiring such individuals "to obtain the vaccine from a medical provider and to attest that they have been vaccinated, save for certain [accommodations]." *Id.* The individuals "will be informed of the risks and benefits of the vaccine and of the option to accept or refuse the vaccine by their medical providers." *Id.*

Accordingly, to the extent that the vaccines at issue here remain subject to the EUA provisions of the FDCA, the Vaccine Directive does not run afoul of those provisions. *Id.; see also Bridges v. Hous. Methodist Hosp.*, No. 21-cv-1774, 2021 WL 2399994, at * (S.D. Tex. June 12, 2021) (rejecting hospital employee's claim, virtually identical to Plaintiffs' claim here, that under FDCA "no one can be mandated to receive 'unapproved' medicines in emergencies," noting that the FDCA "confers certain powers and responsibilities to the Secretary of Health and Human Services in an emergency," "neither expands nor restricts the responsibilities of private employers," and "does not confer a private opportunity to sue the government");  Dep't of Justice, *Whether Section 564 of the Food, Drug and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization* at 2 (July 6, 2021), https://www.justice.gov/olc/file/1415446/download (finding that informed consent provision in FDCA "specifies only that certain information be provided to potential vaccine recipients and does not prohibit entities from imposing vaccination requirements").

Nothing in the case of *Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003), alters this analysis.  In that case, members of the military who either submitted to or were instructed to submit to anthrax vaccinations without their consent pursuant to the Anthrax Vaccine Immunization Program brought an action asserting that, because the Anthrax Vaccine Adsorbed ("AVA") was "an experimental drug unlicensed for its present use," it was a violation of federal law to inoculate them "without their informed consent." *Id.* at 123.  As an initial matter, at issue

here are COVID-19 vaccines, not the AVA.  The Pfizer COVID-19 vaccine has been fully

approved by the FDA, and thus is not "an experimental drug unlicensed for its present use."

Further, the plaintiffs in *Rumsfeld* did not base their claims on an asserted violation of § 360bbb,

as do Plaintiffs here, or indeed even mention that provision in their challenge to the AVA.

Rather, their claim involved wholly different provisions, namely 10 U.S.C. § 1107, a Presidential

Executive Order, and Department of Defense regulations, and the wholly separate issue of

whether the AVA was "being used as an investigational new drug or as a drug unapproved for its

intended use."  *Id.* at 131.  *Rumsfeld* thus provides no persuasive authority for this Court to find

that the Vaccine Directive violates the FDCA.

Because the Vaccine Directive does not violate any provisions of the FDCA, it

necessarily cannot be preempted by the FDCA.  For this reason, Plaintiffs fail to state a

preemption claim.

> B.  <u>The Vaccine Directive Does Not Violate Plaintiffs' Substantive Due Process
> Rights.</u>

Plaintiffs allege that, in taking negative employment actions against Plaintiffs for refusing

to comply with the Vaccine Directive, Defendants violated their "due process right to life and

liberty under the 14th Amendment" and invaded their "zone of privacy and right to bodily

integrity."  Doc. 17 ¶ 43.  "Depending upon whether the claimed violation is by executive act or

legislative enactment, different methods of judicial analysis are appropriate."  *Bauer v. Summey*,

__ F. Supp. 3d __, No. 21-cv-2952, 2021 WL 4900922, at *7 (D.S.C. Oct. 21, 2021).  "The

Tenth Circuit 'appl[ies] the fundamental rights approach when the plaintiff challenges *legislative*

*action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious

*executive action.*'"  *ETP Rio Rancho Park, LLC v. Grisham ("ETP I")*, 522 F. Supp. 3d 966,

1028–29 (D.N.M. 2021) (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018)

(emphasis in original), *cert. denied*, 139 S. Ct. 1347 (2019)).  This case does not fit comfortably into either category, as Plaintiffs "do not challenge 'the tortious conduct of an individual agency officer,' nor do they challenge a purely 'legislative action.'" *ETP I*, 522 F. Supp. 3d at 1028-29 (quoting *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019)).

In the analogous context of a challenge to the vaccine mandate set forth in a DOH public health order, this Court found that the plaintiffs had "advance[ed] a substantive due process challenge to a *legislative* enactment." *Valdez v. Grisham*, __ F. Supp. 3d __, No. 21-cv-783, 2021 WL 4145746, at *5 (D.N.M. Sept. 13, 2021) (quoting *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009) (emphasis in original)); *see also ETP Rio Rancho Park, LLC, v. Grisham ("ETP II")*, __ F. Supp. 3d __, No. 21-cv-92, 2021 WL 765364, at *41 (D.N.M. Feb. 26, 2021) (noting that, "[a]lthough the NMDOH – a state executive agency" – issued the challenged PHO, that PHO was "akin to a legislative action").  Plaintiffs argue that the Court should apply the fundamental rights approach here, too; Defendants counter that the Vaccine Directive reflects an executive action subject to the shocks-the-conscience analysis.  The Court is inclined to agree with Plaintiffs but ultimately need not choose between them, as under either approach, Plaintiffs fail to state a substantive due process claim.

### The Shocks-the Conscience Test

"[C]onduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *ETP I*, 522 F. Supp. at 1029-32 (citing *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013)).  "The behavior complained of must be egregious and outrageous."  *ETP I*, 522 F. Supp. at 1029-32 (citing *Hernandez*, 734 F.3d at 1261).  In mandating COVID-19 vaccines for first responders, Defendants' conduct was neither egregious nor outrageous.  The Vaccine Directive

was adopted to "safeguard the health of [the County's] employees, their families, the customers [they] serve, and the community at large," and follows guidance from NMDOH that "the currently available COVID-19 vaccines are safe and the most effective way of preventing infection, serious illness, and death." Doc. 17; *August 17, 2021 PHO*, NM Health Website. Thus intended to mitigate the risks from COVID-19 and grounded in public health guidelines, Defendants' implementation and enforcement of the Vaccine Directive "do not rise to the level of conscience shocking." *ETP I*, 522 F. Supp. at 1029-32; *accord Bauer*, 2021 WL 4900922, at *8 ("The Policies' implementation of a vaccine mandate to prevent the spread of a deadly virus among the defendant governmental entities' employees and the citizens they serve does not rise to the level of conscience-shocking."); *Herrin v. Reeves*, 2020 WL 5748090, at *9 (N.D. Miss. Sept. 25, 2020) ("[T]his court finds the notion that restrictions designed to save human lives are 'conscious shocking' to be absurd and not worthy of serious discussion."); *Maniscalco v. N.Y.C. Dep't of Educ.*, ___ F. Supp. 3d ___, No. 21-cv-5055, 2021 WL 4344267, at *3 (E.D.N.Y. Sept. 23, 2021) ("Although plaintiffs argue that there are other proven means of preventing the spread of COVID-19 in schools, among them frequent testing and mask wearing, it is not shocking for the City to conclude that vaccination is the best way to do so."). Accordingly, under the shocks-the-conscience analysis, Plaintiffs have failed to state a substantive due process claim.

### The Fundamental Rights Test

The fundamental rights approach involves a "two-part substantive due process framework." *Dias*, 567 F.3d at 1182. First, the Court must "carefully describe the asserted fundamental liberty interest." *Id.* at 1182 (citation omitted). Second, the Court must decide "whether that interest is 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were

14

sacrificed.'" *Id.* (quoting *Washington v. Glucksberg,* 521 U.S. 702, 720–21 (1997)). If the Court determines that the rights asserted are fundamental, the Fourteenth Amendment "forbids the government to infringe [those] rights at all, . . . unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721. If the legislative (or executive) action at issue "does not implicate a fundamental right, it must nonetheless bear a rational relationship to a legitimate government interest." *Dias*, 567 F.3d at 1182 (citation omitted).

Here, Plaintiffs' assertion of broadly defined rights falls short of providing the "careful description of the asserted fundamental liberty interest" required under *Glucksberg* to establish a fundamental right. *ETP II*, 2021 WL 765364, at * 42. Plaintiffs do not explain how the rights allegedly violated by the Vaccine Directive are *fundamental*; indeed, nowhere do they address how the right to continued employment in a detention center, unvaccinated and during a pandemic, is "deeply rooted in this Nation's history and tradition." *Id.*

In opposition to Defendants' motion to dismiss, Plaintiffs appear to concede that the "expectation of employment" is not a fundamental right but contend that "what is *fundamental* is the right to be free from governmental bodily intrusions, particularly where those intrusions carry a potential for serious harm." Doc. 22 at 2 (emphasis in original). Plaintiffs insist that "[n]umerous Supreme Court cases decided long after *Jacobson* have upheld the right to refuse medical treatment on constitutional grounds," citing *inter alia*, to *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990) (finding a "constitutionally protected liberty interest in refusing unwanted medical treatment"). *Id.* at 14. Plaintiffs also cite to *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019), for the proposition that the Vaccine Directive violates their "constitutional right to be free from forcible intrusions on their bodies against their will, absent a compelling state interest." Doc. 22 at 21 (quoting *Guertin*, 912 F.3d at 919).

But the Vaccine Directive "does not force Plaintiffs to consent to vaccination." *Andre-Rodney v. Hochul*, __ F. Supp. 3d __, No. 21-cv-1053, 2021 WL 5050067, at *6 (N.D.N.Y. Nov. 1, 2021). Nor does it subject anyone, unwittingly, to lead-contaminated drinking water. *Guertin*, 912 F.3d at 919. Unlike the plaintiffs in *Cruzan* and its progeny, Plaintiffs here are not "being forcibly injected or forcibly given unwanted medical treatment," or otherwise "facing vaccination against [their] will." *Bauer*, 2021 WL 4900922, at *9 n.5. "Nor is any Plaintiff unknowingly ingesting lead-contaminated water." *Beckerich v. St. Elizabeth Med. Ctr.*, __ F. Supp. 3d __, No. 21-cv-105, 2021 WL 4398027, at *7 (E.D. Kty. Sept. 24, 2021) (distinguishing *Guertin* from case before it where healthcare workers challenged medical center's policy mandating that employees be vaccinated against COVID-19). To the contrary, Plaintiffs remain free to choose whether to be vaccinated.

Accordingly, the Vaccine Directive does not "directly infringe[]" on the protected right to refuse medical treatment, and the *Cruzan* line of cases (including *Guertin*) is inapposite. *Andre-Rodney*, 2021 WL 5050067, at *6.[4] Rather, "the Vaccine [Directive] conditions Plaintiffs' right to be employed at [the Detention Center] on their vaccination against COVID-19." *Id.* As such, "the right that is being burdened is the right to employment at [the Detention Center]." *Id.*; *see also USA, Inc. v. Hochul*, 17 F.4th 226, 294 (2d Cir. 2021) ("Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers.");

---

[4] *Cruzan* is also distinguishable because it was limited "to an individual's choice related to the refusal of lifesaving subsistence. . . . – with no ramifications to the physical health of others." Vaccines, in contrast, "address a collective enemy, not just an individual one." *Klaassen*, 549 F. Supp. 3d at 869; *accord, Mass. Corr. Officers Federated Union v. Baker*, __F. Supp. 3d__, No. 21-cv-11599, 2021 WL 4822154, at *7 n.5 (D. Mass. Oct. 15, 2021) ("*Cruzan*'s holding, however, was limited to an individual's choice related to the refusal of lifesaving medical care and nutrition, with no impact on the health of others or the public.").

*Norris*, __ F. Supp. 3d __, No. 21-cv-756, 2021 WL 4738827, at *2 (W.D. Mich. Oct. 8, 2021)

("The MSU vaccination policy does not force Plaintiff to forego her rights to privacy and bodily

autonomy, but if she chooses not to be vaccinated, she does not have the right to work at MSU at

the same time."); *Bauer*, 2021 WL 4900922, at *9 ("[A] more appropriate description [of the

rights at issue] is plaintiff's interest in continued employment with defendants while

unvaccinated for COVID-19."); *Brnovich v. Biden*, __ F. Supp. 3d __, No. 21-cv-1568, 2022 WL

252396, at *25 (D. Ariz. Jan. 27, 2022) ("Properly construed, this case raises only the much

narrower question whether there is a substantive due process right to refuse vaccination while an

employee of a federal contractor" – a "question easily answered in the negative."); *Beckerich*,

2021 WL 4398027, at *7 ("Plaintiffs are choosing whether to comply with a condition of

employment, or to deal with the potential consequences of that choice.").

Plaintiffs do, in fact, appear to understand that, at essence, their opposition to the Vaccine

Directive on substantive due process grounds involves its infringement of their asserted right to

continue working (unvaccinated) at the Detention Center.  Specifically, Plaintiffs contend that

they "have a property right in continued employment."  Doc. 22 at 15.  "Property rights,

however, are not fundamental for substantive due process purposes."  *ETP I*, 522 F. Supp. at

1029-32.  And "[p]roperty interests related to employment" are no exception, as they "are not

among protected fundamental rights."  *Maniscalco*, 2021 WL 4344267, at *3.  "Neither is there a

fundamental right to continued public employment."  *Id.* (citing *Martin v. Town of Brattleboro*,

No. 07-cv-260, 2008 WL 4416283, at *2 (D. Vt. Sept. 24, 2008) (noting that "most Circuit

Courts of Appeal have declined to find that a right to continued public employment is a

fundamental property interest entitled to substantive due process protection.")); *see also*

*American Fed'n of Gov't Employees v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003)

(finding that federal employees did not have a fundamental right to public employment for purposes of substantive due process and stating that "[n]either the Supreme Court nor [the D.C. Circuit] has ever recognized an interest in public employment as fundamental").  Indeed, when the government acts in its role as an employer (as Defendants do here), as opposed to its "role in governing the citizenry at large," the Supreme Court "has applied what was essentially a rational basis test" to constitutional claims.  *Baker*, 2021 WL 4822154, at *6 (citing *Kelley v. Johnson*, 425 U.S. 238, 244-48 (1976)).

Further, the Tenth Circuit has unequivocally held that the "right to practice in [one's] chosen profession . . . does not invoke heightened scrutiny."  *Guttman v. Khalsa*, 669 F.3d 1101, 1118 (10th Cir. 2012).  "[A]lthough 'the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment,' this right is 'subject to reasonable government regulation.'" *Id.* (quoting *Conn v. Gabbert,* 526 U.S. 286, 291-92, (1999)); *see also Collins v. Texas,* 223 U.S. 288, (1912) (the right to practice medicine is not a fundamental right).  While Plaintiffs may have a right to engage in their chosen professions, governmental infringement on this right will be "presumed to be valid" so long as it is "rationally related to a legitimate state interest." *Klaassen I*, 549 F. Supp. 3d at 861 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

Thus here, where "the [V]accine [M]andate has a significant nexus to the employment of [] Plaintiffs, a rational basis review will apply."  *Baker*, 2021 WL 4822154, at *6.  This conclusion is in keeping with that reached in the scores of cases holding that vaccine mandates do not implicate a fundamental right and that, as a result, rational basis review applies in determining the constitutionality of such mandates.  *Klaassen v. Trustees of Indiana Univ. ("Klaassen II")*, 7 F.4th 592 (7th Cir. 2021) (rejecting assertion by plaintiffs, who challenged

18

Indiana University's mandatory COVID-19 vaccine requirement, that the rational basis standard

does not offer enough protection for their interests, indicating that the court "must apply the law

established by the Supreme Court" in *Jacobson v. Massachusetts,* 197 U.S. 11 (1905), which, in

holding that "a state may require all members of the public to be vaccinated against smallpox,"

"shows that plaintiffs lack" a fundamental right to be free from mandatory vaccine measures);

*We the Patriots*, 17 F.4th at 293 ("[T]he Supreme Court ha[s] consistently recognized that the

Constitution embodies no fundamental right that in and of itself would render vaccine

requirements imposed in the public interest, in the face of a public health emergency,

unconstitutional."); *Norris v. Stanley*, 2021 WL 4738827, at *2 ("Over the last year and a half,

courts have looked to *Jacobson* to infer that a rational basis standard applies to generally

applicable vaccine mandates."); *Bauer*, 2021 WL 4900922, at *10 (holding that vaccine

mandates applicable to city, county, and fire district employees "must only bear a rational

relationship to a legitimate government interest" in order to pass constitutional muster); *Baker*,

2021 WL 4822154, at *7 ("*Jacobson* and recent cases show that declining a vaccine does not

give rise to a fundamental right and rational basis scrutiny will apply") (collecting cases); *Andre-

Rodney*, 2021 WL 5050067, at * 7 ("[B]ecause the Vaccine Mandate does not burden a

fundamental right, it is subject to rational basis review."); *Klaassen I*, 549 F. Supp. 3d at 869

(collecting cases demonstrating "the consistent use of rational basis review to assess mandatory

vaccination measures," and, in light of "a century's worth of rulings, declining to "extend

substantive due process to recognize" a fundamental right to be free from COVID-19 vaccination

requirements); *Harris v. Univ. of Mass.*, No. 21-cv-11244, 2021 WL 3848012, at *6 (D. Mass.

Aug. 27, 2021) ("[T]he case [challenging a policy requiring students who seek to be on campus

to be vaccinated prior to fall semester] "commends a deferential standard for analyzing

Fourteenth Amendment challenges to generally applicable public health measures like the one

here"); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (Gorsuch, J.,

concurring) (explaining that *Jacobson* is "essentially . . . rational basis review").

"To satisfy the rational basis test, the [challenged governmental action] need only be

rationally related to a legitimate government purpose." *Powers v. Harris,* 379 F.3d 1208, 1215

(10th Cir. 2004). Rational basis review "is highly deferential toward the government's actions.

The burden is on the plaintiff to show the governmental act complained of does not further a

legitimate state purpose by rational means." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772

(10th Cir. 2008). The government's decision "must be upheld if any state of facts either known

or which could reasonably be assumed affords support for it. Second-guessing by a court is not

allowed." *Powers*, 379 F.3d at 1216-17. Moreover, "rational-basis review does not give courts

the option to speculate as to whether some other scheme could have better regulated the evils in

question." *Id.* at 1217. The Court "will not strike down [governmental action] as irrational

simply because it may not succeed in bringing about the result it seeks to accomplish, or because

the statute's classifications lack razor-sharp precision." *Id.* Nor will the Court "overturn [an

order] on the basis that no empirical evidence supports the assumptions underlying the

[governmental] choice." *Id.* Indeed, the Court is "not bound by the parties' arguments as to

what legitimate state interests the [order] seeks to further," but instead "is obligated to seek out

other conceivable reasons for validating a state [order]." *Id.*

The Court finds that the Vaccine Directive meets the rational basis test. "Vaccination

requirements, like other public-health measures, have been common in this nation." *Klaassen II*,

7 F.4th at 593. In *Jacobson,* the Supreme Court held that "a community has the right to protect

itself against an epidemic of disease which threatens the safety of its members." 197 U.S. at 27.

Based on that premise, the Supreme Court declined to find unconstitutional, on either substantive due process or equal protection grounds, a Cambridge, Massachusetts regulation that required all adult inhabitants of that city, *without exception*, to be vaccinated against smallpox.  The Supreme Court explained that "when the regulation in question was adopted smallpox, according to the recitals in the regulation adopted by the board of health, was prevalent to some extent in the city of Cambridge, and the disease was increasing." *Id.*  The Court further explained that "in view of the methods employed to stamp out the disease of smallpox," no one could "confidently assert that the means prescribed by the state to that end has no real or substantial relation to the protection of the public health and the public safety." *Id.* at 31.  The Court noted that while it did "not decide, and [could not] decide, that vaccination is a preventive of smallpox," it took "judicial notice of the fact that this is the common belief of the people of the state, and, with this fact as a foundation," held that Cambridge's compulsory vaccine statute was "a health law, enacted in a reasonable and proper exercise of the police power." *Id.* at 35.  The Court then found that, since "vaccination, as a means of protecting a community against smallpox, finds strong support in the experience of this and other countries, no court . . . is justified in disregarding the action of the legislature simply because in its or their opinion that particular method was – perhaps, or possibly – not the best either for children or adults." *Id.*

In reaching its decision, the Supreme Court considered and rejected the defendant's "offers of proof" of "those in the medical profession who attach little or no value to vaccination as a means of preventing the spread of smallpox, or who think that vaccination causes other diseases of the body." *Id.* at 30.  The Court explained that it assumed that the legislature "was not unaware of these opposing theories," and that it was for the legislature, *and not the court*, to "determine which one of the two modes was likely to be the most effective for the protection of

the public against disease." *Id.* Indeed, the Court explained that the legislature "could not properly abdicate its function to guard the public health and safety," and thus was compelled, of necessity, to choose between opposing theories on how best to "meet and suppress the evils of a smallpox epidemic that imperiled an entire population." *Id.* at 30-31. The Court emphasized that the "possibility that the belief [in the efficacy of vaccines] may be wrong, and that science may yet show it to be wrong," was "not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases." *Id.* at 35.

Ultimately, the Court refused to allow the defendant to "claim [] an exemption" from the vaccination statute based on his offers of proof regarding the "evil" of vaccines, as doing so would "strip the legislative department of its function to care for the public health and the public safety when endangered by epidemics of disease." *Id.* at 37. And in so refusing, the Court noted that it was "not prepared to hold that a minority, residing or remaining in any city or town where smallpox is prevalent, and enjoying the general protection afforded by an organized local government, may thus defy the will of its constituted authorities, acting in good faith for all, under the legislative sanction of the state." *Id.* The Court concluded: "We are unwilling to hold it to be an element in the liberty secured by the Constitution of the United States that one person, or a minority of persons, residing in any community and enjoying the benefits of its local government, should have the power thus to dominate the majority when supported in their action by the authority of the state." *Id.*

With its decision in *Jacobson*, the Supreme Court "settled that it is within the police power of a state to provide for compulsory vaccination." *Zucht v. King*, 260 U.S. 174, 176, (1922). "[F]or over 100 years [*Jacobson*] has stood firmly for the proposition that the urgent

public health needs of the community can outweigh the rights of an individual to refuse

vaccination.  *Jacobson* remains binding precedent."  *We the Patriots*, 17 F.4th at 294 n.35.  In

the context of the current pandemic, courts consistently have applied *Jacobson* to find that

mandatory vaccine policies meet the rational basis test.  *See, e.g., Baker*, 2021 WL 4822154, at

*7 (finding that vaccine mandate applicable, *inter alia*, to correction officers, was "a rational

way [to] attain" the compelling interest of "stemming the spread of COVID-19"); *Bauer*, 2021

WL 4900922, at *11 (noting that "numerous courts have recognized that preventing the spread of

COVID-19 provides a rational justification for vaccine mandates."); *Maniscalco*, 2021 WL

4344267, at *3 ("Ultimately, even if plaintiffs disagree with it, the [vaccine mandate] at issue

represents a rational policy decision surrounding how best to protect children during a global

pandemic."); *Johnson v. Brown*, __ F. Supp. 3d __, No. 21-cv-1494, 2021 WL 4846060, at *19

(D. Ore. Oct. 18, 2021) ("The decision to require vaccination among state executive agency

employees, and critical populations such as healthcare workers and providers and education

workers and volunteers, is a rational way to further the State's interest in protecting health and

safety during the COVID-19 pandemic."); *Brnovich*, 2022 WL 252396, at *26 (holding that

plaintiffs' substantive due process challenge failed because federal contractor vaccine mandate

was rationally related to legitimate interest of inhibiting spread of COVID-19); *Klaassen I*, 549

F. Supp. 3d at 873 (noting that, in light of the fact that the "vaccination campaign has markedly

curbed the pandemic," "Indiana University insisting on vaccinations for its campus

communities," thereby "stemming illness, hospitalizations, or deaths at the university level[,]

hardly proves irrational");  *Harris,* 2021 WL 384012, at *6 (holding that university's decision to

mandate vaccines was based "upon both medical and scientific evidence and research and

guidance, and thus is at least rationally related to" the "legitimate interests" of curbing the spread

of COVID-19 and "returning students safely to campus"); *America's Frontline Doctors v. Wilcox*, No. 21-EDCV-1243, 2021 U.S. Dist. LEXIS 144477 (C.D. Cal. July 30, 2021) (holding that "there is clearly a rational basis for Defendants to institute the Policy requiring vaccination" to further the goal of facilitating the "protection of the health and safety of the University community").

Applying *Jacobson* to the Vaccine Directive at issue here, this Court reaches the same conclusion.  The governmental purpose of stemming the spread of COVID-19, especially in the wake of the many variants that have mutated from the original virus, is not only legitimate, but is "unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67. "[Requiring those who work in [detention center] settings to be vaccinated is rationally related to the furtherance of that interest." *Andre-Rodney*, 2021 WL 5050067, at *7.  Vaccination is "one of the most highly regarded" tools "to reduce viral transmission." *Maniscalco*, 2021 WL 4344267, at *4.  "There is evidence that vaccines provide more robust protection than antibodies from a previous COVID-19 infection" and "reduce the potential for hospitalization as compared to the unvaccinated population." *Id.*  As noted above, the DOH has published guidance indicating that: "the currently available COVID-19 vaccines are safe and the most effective way of preventing infection, serious illness, and death"; "widespread vaccination protects New Mexico's health care system as vaccines decrease the need for emergency services and hospitalization"; and "the refusal to receive the COVID-19 vaccine not only endangers the individual but the entire community, and further jeopardizes the progress the State has made against the pandemic by allowing the virus to transmit more freely and mutate into more transmissible or deadly variants." *August 17, 2021 PHO*, NM Health Website.  Defendants took account of this guidance in issuing the Vaccine Mandate, which was adopted for the express

24

purpose of "safeguard[ing] the health of [the County's] employees, their families, the customers we serve, and the community at large from this highly contagious, infectious disease." Doc. 17 at 25.

The requirements set forth in the Vaccine Directive, thus grounded in guidance from local health authorities, are rationally related to Defendants' legitimate purpose of protecting the community "against an epidemic of disease [that] threatens the safety of its members." *Jacobson*, 197 U.S. at 27. Since *Jacobson* was decided, the "methods employed to stamp out" diseases have continued to include vaccination, which, "as a means of protecting a community against smallpox[, other diseases, and now, COVID-19], finds strong support in the experience of this and other countries." *Id.* Accordingly, no one could "confidently assert that the means prescribed by the [County] to prevent the spread of COVID-19," namely, requiring certain individuals to be vaccinated, has "no real or substantial relation to the protection of the public health and the public safety." *Id.* at 31. It follows that the Vaccine Directive was "enacted in a reasonable and proper exercise of [Defendants'] police power." *Id.* at 35. Indeed, "this case is easier than *Jacobson*," as the Vaccine Directive "does not require every adult member of the public to be vaccinated, as Massachusetts did in *Jacobson*," but rather is targeted to first responders, including Detention Center employees who are likely to impact vulnerable inmate populations, and allows for reasonable accommodations. *Klaassen II*, 7 F.4th at 593.

Plaintiffs' attempts to circumvent *Jacobson* are unavailing. First, Plaintiffs argue that Defendants are not entitled to the deference afforded the state under *Jacobson* when, in the exercise of its police power, it mandates vaccination. According to Plaintiffs, unlike a governor with "emergency powers granted to him by the legislature," Defendants herein "have no emergency powers, little or no resources or medical expertise, nor the legal basis to be making

medical policy choices for anyone." Doc. 22 at 16.  Perhaps to emphasize this point, Plaintiffs

note that Governor Michelle Lujan Grisham "has not seen fit to mandate a vaccine for covid"

and thus "Dona Ana County should not be doing so [either]."  *Id.*

But Plaintiffs' argument overlooks the fact that, under New Mexico statute and with only

certain exceptions not relevant here, "[a]ll counties are granted the same powers that are granted

municipalities," including "those powers necessary and proper to provide for the safety, preserve

the health, promote the prosperity and improve the morals, order, comfort and convenience of

any county of its inhabitants."  N.M. Stat. Ann. § 4-37-1.  The board of county commissioners of

each county is given the authority to "discharge these powers."  *Id.*  Thus, in adopting the

Vaccine Directive, Dona Ana County (through its Board of County Commissioners and the

Board's employee, County Manager Macias) acted within its statutorily granted powers to

provide for the safety and preserve the health of its inhabitants.  Indeed, Governor Lujan

Grisham quickly made the same "policy choice" that Plaintiffs complain of here:  on August 17,

2021, Governor Lujan Grisham and the DOH issued "Public Health Emergency Order Requiring

All School Workers Comply with Certain Health Requirements and Requiring Congregate Care

Facility Workers, Hospital Workers, and Employees of the Office of the Governor Be Fully

Vaccinated." *August 17, 2021 PHO*, NM Health Website.  In relevant part, the August 17, 2021

PHO requires all "congregate care facility workers," including individuals who work at "State

correctional facilities," "to be fully vaccinated against COVID-19 unless they qualify for an

exemption."  *Id.* at 3-4.  Thereafter, on December 2, 2021, Governor Lujan Grisham and the

DOH issued another public health order mandating that these same individuals receive booster

vaccines. *See December 2, 2021 Public Health Order*, NM Health Website.  Accordingly,

Plaintiffs have provided no reasoned basis for this Court to withhold from Defendants the

deference afforded other legislative and executive entities in the context of virtually identical

vaccine mandates designed to stop the spread of COVID-19.

Next, Plaintiffs make an "ill-fated effort to circumvent well-established Supreme Court

precedent by re-categorizing the COVID-19 vaccines" as "[non-]traditional vaccine[s]."

*Messina v. College of New Jersey*, __ F. Supp. 3d. __, No. 21-cv-17576, 2021 WL 4786114, at

*8 (D.N.J. Oct. 14, 2021). Plaintiffs, however, provide no medical authority to distinguish the

COVID-19 mRNA vaccines from any other vaccines; indeed, public health information is to the

contrary, as "the CDC has clearly opined that the [vaccines against COVID-19] constitute

'vaccines.'" *Id.*; *accord, Smith v. Biden*, 21-cv-19457, 2021 WL 5195688, at *6 (D.N.J. Nov. 8,

2021) (rejecting argument that *Jacobson* does not apply because "the COVID-19 vaccines are

not actual vaccines"); *Johnson*, 2021 WL 4846060, at *12 (rejecting argument that *Jacobson* and

the cases following it are irrelevant "because they either were not considering an 'experimental'

vaccine or did not properly consider that the vaccine was not yet approved by the FDA," as such

facts are not "dispositive on the standard of review"). In response to the specific question, "Is

the mRNA vaccine considered a vaccine?" the CDC states: "Yes. mRNA vaccines, such as

Pfizer-BioNTech and Moderna, work differently than other types of vaccines, but they still

trigger an immune response inside your body. This type of vaccine is new, but research and

development on it has been under way for decades." *Messina,* 2021 WL 4786114, at *8 (quoting

Centers for Disease Control and Prevention, "Myths and Facts about COVID-19 Vaccines").

And as described above, "other courts – including this one – [have] reviewed similar challenges

to COVID-19 vaccine policies and have uniformly concluded that *Jacobson* controls." *Id.*; *see*

*Valdez*, 2021 WL 4145746, at *8.

Finally, Plaintiffs call into question the safety and efficacy of the COVID-19 vaccines. *See* Doc. 22 at 6, 7, 15 ("the Court may not be aware that scientists and healthcare professionals all over the world are sounding the alarm and frantically appealing to the FDA to halt the vaccines"; "the testing done on these vaccines did *not* show that they prevented transmission from the vaccinated to others" (emphasis in original); "the MRNA 'vaccine' has not been tested sufficiently to know ultimately whether it is safe and effective and which had already resulted in many thousands of deaths and over fifty thousand reported serious adverse events"). But Plaintiffs' "disputes over the most reliable science" are of no moment to the instant analysis, as "the court doesn't intervene so long as [Defendants'] process is rational in trying to achieve public health." *Klaassen I*, 549 F. Supp. at 888 (citing *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) ("[P]laintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* makes clear, that is a determination for the [policymaker], not the individual objectors.")); *see also Norris*, 2021 WL 4738827 ("Put plainly, even if there is vigorous ongoing discussion about the effectiveness of natural immunity, it is rational for MSC to rely on present federal and state guidance in creating its vaccine mandate."); *Johnson*, 2021 WL 4846060, at *15 ("[T]he issue before the Court is not to analyze the safety of the vaccines or whether the Vaccine Orders are the best (or even a good) policy.").

As did the Court in *Jacobson*, this Court assumes that Defendants are aware of "opposing theories" on the safety and efficacy of vaccines; and as did the Court in *Jacobson*, this Court finds, as it must, that it is for Defendants, and not the Court, to determine what "[is] likely to be the most effective [mode] for the protection of the public against disease." *Jacobson*, 197 U.S. at 30. Indeed, this is so regardless of whether "science may yet show" Defendants' belief in the

efficacy of the COVID-19 vaccines "to be wrong," as Defendants have the right to enact
directives "adapted to prevent the spread of contagious diseases." *Id.*  While the "Court
acknowledges [Plaintiffs'] argument that there simply hasn't been enough time to generate long-
term data, . . . the Court cannot reasonably conclude that [Defendants'] arguments in favor of
vaccination were not made in good faith, or that they are irrational." *Maniscalco*, 2021 WL
4344267, at *4.  Accordingly, "[s]ubstantive due process [] requires the Court to afford
deference to [D]efendants' weighing of the competing concerns." *Id.*  This is "especially so"
where, as here, the County is exercising "its policy powers to mitigate harm in a public health
emergency." *Johnson*, 2021 WL 4846060, at *15 (citing *South Bay United Pentecostal Church
v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, CJ., concurring) ("When [public] officials
undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be
especially broad.  Where those broad limits are not exceeded, they should not be subject to
second-guessing by an unelected federal judiciary, which lacks the background, competence, and
expertise to assess public health and is not accountable to the people.")).

For these reasons, the Vaccine Mandate meets the rational basis test.  Accordingly, under
the fundamental rights approach, Plaintiffs have failed to state a substantive due process claim.

C.      The Vaccine Directive Does Not Impose an Unconstitutional Condition.

Plaintiffs allege that, by conditioning Plaintiffs' continued employment on their
compliance with the Vaccine Mandate, Defendants violated the doctrine of unconstitutional
conditions.  Doc. 17 ¶ 54.  "[T]he unconstitutional conditions doctrine forbids burdening the
Constitution's enumerated rights by coercively withholding benefits from those who exercise
them." *Koontz v. St. Johns River Water Mgm't Dist.*, 570 U.S. 595, 606 (2013).  To state an
unconstitutional conditions claim, Plaintiffs, in the first instance, must "identify an enumerated

right that the [Vaccine Mandate] coerces [them] into giving up." *Norris*, 2021 WL 4738827, at *3.

As explained above in the context of Plaintiffs' substantive due process claim, the Vaccine Directive does not violate any of Plaintiffs' fundamental rights.  Without identifying a fundamental right, Plaintiffs' challenge to the Vaccine Mandate as an unconstitutional condition necessarily fails.  *Id.*; *accord, Smith*, 2021 WL 5195688, at *8 (holding that while plaintiffs "are undeniably being presented with a difficult choice – comply with the vaccine mandate or risk losing their employment," they nonetheless are "presented with a choice and are not being coerced to give up a fundamental right since there is no fundamental right to refuse vaccination"); *Klaassen I*, 2021 WL 3073926, at *23-26 (rejecting students' argument that university's vaccine mandate violated the unconstitutional conditions doctrine because a vaccine mandate does not violate a fundamental right); *Andre-Rodney*, 2021 WL 5050067, at *7 (holding that plaintiffs failed to show likelihood of success on merits of unconstitutional conditions claim that vaccine mandate unconstitutionally coerced them into giving up their interest in refusing unwanted medical treatment).

Accordingly, Plaintiffs have failed to state a claim that the Vaccine Mandate violated the unconstitutional conditions doctrine.

D.      Plaintiffs Fail to State a Cognizable Human Rights Law Claim.

Plaintiffs allege that by mandating compliance with the Vaccine Mandate, Defendants have violated the "prohibition against nonconsensual human experimentation" derived from international law, and thus have committed "crimes against humanity," in violation of federal common law.  Doc. 17 ¶¶ 56, 58.  Plaintiffs provide a laundry list of sources for this nebulous claim, including the Nuremberg Code.  *Id.* ¶ 57.  Notably, in response to Defendants' Motion to

Dismiss, Plaintiffs provide no opposition to Defendants' argument that this claim is subject to dismissal.  Under the relevant Local Rule, Plaintiffs' silence is deemed concession to dismissal of this claim.  D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").

Their silence is perhaps unsurprising, as Plaintiffs have not sufficiently provided any grounds under which the Nuremberg Code, or any other source, provides a cause of action here. In order to state a claim that the Vaccine Mandate "violates the norms of *jus cogens* recognized in the Nuremberg Code," Plaintiffs "must provide international law materials concerning the *jus cogens* rights [they] assert[] . . . that address the application of the asserted rights under the circumstances of this case." *Johnson v. Brown*, 2021 WL 4846060, at \*10 (citation omitted). Plaintiffs, however, "offer no international law materials that vaccine mandates, particularly during a worldwide pandemic, for an FDA-authorized vaccine that has undergone significant clinical trials and safety evaluation by the FDA, is considered a forced or coerced medical 'experiment.'"  *Id.* at \*11.  Notably, Plaintiffs "do not contend that they are being forced to be part of the *clinical trials* for the [COVID-19 vaccines] or that they are being forcibly injected while being physically held against their will."  *Id.* (emphasis in original).  Rather, "they argue a very different context – a challenge to a vaccine mandate issued in a public health emergency that orders a particular subset of [County] workers to take an FDA-authorized vaccine at the risk of losing their employment."  *Id.*  Simply put, the requirements of the Vaccine Mandate are "nowhere near the same as Nazi doctors performing experiments on victims held against their will in concentration camps, as was the subject of a portion of the Nuremberg Trials."  *Id.*

Accordingly, Plaintiffs fail to allege any facts that, if proven, would show that "under the present circumstances there is an accepted international norm concluding that the challenged conduct here is considered to be prohibited 'medical experimentation.'" *Id.* For this reason, Plaintiffs fail to state a human rights claim.

E.      The Court Will Not Decide Plaintiffs' Pendent State Law Claims.

In addition to their federal claims, Plaintiffs' Complaint asserts claims arising from New Mexico law, namely that Defendants violated the New Mexico Whistleblowers Act and the common law prohibition against retaliatory discharge. The Court's pendent jurisdiction over such state law claims "is exercised on a discretionary basis," and the Tenth Circuit has generally held that "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citations omitted). The Tenth Circuit has explained its general disinclination "to exercise pendent jurisdiction in such instances because notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id.* at 1230 (citations omitted).

Having determined that Plaintiffs' federal claims are subject to dismissal, the only remaining issues are whether Defendants violated the New Mexico Whistleblowers Act and the New Mexico common law prohibition on retaliatory discharge. The Court finds that these issues are best left for a state court's determination. *Brooks*, 614 F.3d at 1230. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and will dismiss them without prejudice.

*Plaintiffs' Motion to Strike*

Defendants filed three Notices of Supplemental Authority, alerting the Court to newly published "persuasive authority" relevant to the arguments set forth in their Motion to Dismiss. Docs 21, 25, 27.  In their Motion to Strike, Plaintiffs argue that, in filings these Notices without first seeking concurrence from Plaintiffs or leave of Court, Defendants violated Rule 15 of the Federal Rules of Civil Procedure.

Rule 15, however, concerns amendment of a *pleading*.  *See* Fed. R. Civ. P. 15 (setting forth rules for amending a pleading before, during, and after trial).  Here, Defendants have not attempted to amend their answer or any other pleading.  Accordingly, Rule 15 is inapposite.

Rather, in filing their Notices of Supplemental Authority, Defendants have acted in compliance with Local Rule 7.8, which specifically states that, "[i]f pertinent and significant authorities come to a party's attention after the party's brief has been filed . . . a party may promptly file a 'Notice of Supplemental Authorities,' setting forth the citations."  D.N.M.LR-Civ. 7.8(b).  This is precisely what Defendants have done here.  Further, Defendants have "state[d] the reasons for the supplemental citations," in compliance with the Local Rule. D.N.M.LR-Civ. 7.8(c).  Plaintiffs had the opportunity to file a response to the Notices "within seven (7) days of the filing of the Notices," but did not take advantage of that opportunity.  *Id.*

In short, Defendants' filing of their Notices of Supplemental Authority was done in compliance with the relevant Local Rule and did not violate any federal rule of civil procedure. Plaintiffs were permitted, under the Local Rule, to file a response to Defendants' Notices but elected not to do so.  Under these circumstances, Plaintiffs are not entitled to an order striking Defendants' Notices or permitting them to file any additional briefs in connection with Defendants' Motion to Dismiss.

## CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted on any of their claims allegedly arising under federal law, namely, their preemption claim, their substantive due process claim, their unconstitutional conditions claim, and their human rights law claim.  As a result, those claims will be dismissed with prejudice as to all Defendants, and the Court need not reach the issue of qualified immunity.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and, accordingly, those claims are dismissed without prejudice. Because Plaintiffs' Motion to Strike is without merit, the Court will not strike Defendants' Notices or permit Plaintiffs to file any additional briefs in connection with Defendants' Motion to Dismiss.

IT IS THEREFORE ORDERED that Defendants Macias, Baker, Mendoza, Fleming and County of Dona Ana's Motion to Dismiss in Lieu of an Answer [Doc. 20] is GRANTED, as follows:  Plaintiffs' federal law claims, as set forth in Counts One, Four, Five, Six, and Seven, are dismissed with prejudice and Plaintiffs' state law claims, as set forth in Counts Two and Three, are dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike [Doc. 26] is DENIED.

DATED this 6th day of May 2022.

MARTHA VÁZQUEZ
Senior United States District Judge